FRANK D. HOVEY v. CAROLINE NELLIS AND MARY M. BECK, AND FRANK J. LICHT v. THE SAME.

[Two cases.]

*Will—Vested future estates—Contingent remainders—Sale by guardian.*

A testator, having divided a portion of his property among certain of his children, devised the remainder, subject to life-estates to his wife, and a son for whom no provision had been made, to the son's children, and, in case of the son's death without issue, to the testator's heirs. The son had no children when the will was made nor when it became operative, but three were born to him after the death of the testator, to whom the life-estates were conveyed, whereupon, and during their father's lifetime, their interest in the land was sold at guardian's sale by order of the chancery court. The son died, leaving two of the children and the daughter of the third child as his sole heirs at law, after which the owner of the title conveyed by the guardian's deed filed a bill against said heirs to quiet his title to the land. The heirs defended, and claimed that the only estate held by the three children by virtue of the will at the time of the execution of the guardian's deed was a contingent remainder, and that, while their father lived, it was uncertain whether he would leave any children, and therefore it was uncertain to whom the land would pass. One of the surviving children further claimed that, as the third child died during her father's lifetime, the grandchild took no interest in the reversionary estate, but that it passed to the surviving children; while the grandchild claimed that she inherited the one-third which her mother would have inherited, to take effect upon the termination of the life-estates. And, in affirming a decree in favor of the complainant, it is held:

a—That the manifest intent of the testator was that the land should go to the issue of the son, if he should have any, and that there is nothing in the provisions of the will from which it can be inferred that he intended to divert the estate, in any event, from the direct heirs of the son's children.

b—That upon the birth of the first child he became, under How. Stat. § 5529 (which provides that future estates in land are vested when there is a person in being who would have an

immediate right to possession upon the ceasing of the intermediate or precedent estate, and are contingent while the person to whom, or the event upon which, they are limited to take effect remains uncertain), the person in being entitled to the immediate right of possession upon the ceasing of the life-estates, and possessed of a vested estate in remainder, subject to be reopened to let in after-born children.

c—That each of the three children possessed an alienable estate, under How. Stat. § 5551, which provides that expectant estates are descendible, devisable, and alienable in the same manner as estates in possession; and that the grantee of either, in the absence of limitations to the contrary, would succeed to the entire estate of the grantor, and would take it subject to be reopened in the same manner as though the title had remained in the grantor.

d—That, the life-estates having by purchase become merged in the vested remainder, no outstanding interest remained, and no portion of the title could be thereafter divested except by the birth of another child, which would only take away so much of the title of each of the three children as would give the newly-born heir an equal interest with them.

e—That, if the Court were not correct in the foregoing conclusions, the complainant must prevail, for the reason that How. Stat. § 5551, as held in *L'Etourneau v. Henquenet*, 89 Mich. 428, applies to contingent estates, which when alienated are subject to the contingency by which they may be defeated, and, if held by minors, they may be sold by their guardians under the direction of the court of chancery; and, the proceedings instituted to convey the interests of the three children being regular, the guardian's deed issued in pursuance thereof conveyed their entire interest to the grantee.

Appeals from Wayne. (Gartner, J.) Argued October 12, 1893. Decided January 9, 1894.

Bills to quiet title. Defendants appeal. Decrees affirmed. The facts are stated in the opinion.

*O. E. Angstman* (*Clark & Pearl*, of counsel), for complainants.

*Gray & Gray* (*W. J. Stuart*, of counsel), for defendant Nellis.

*Bowen, Douglas & Whiting* (*W. J. Stuart*, of counsel), for defendant Beck.

GRANT, J. The controversies in these two suits are identical, and are governed by the same facts. In this opinion we will refer only to the case of *Hovey v. Nellis.*

The bill is filed to quiet the title to outlot No. 4 of the L. Moran farm in the city of Detroit. This farm was a narrow strip of land a few hundred feet wide, and extending back from the Detroit river about three miles. It was divided into 9 lots, numbered from 1 to 9, inclusive. Lot No. 9 lay farthest from the river, and included 60.53 acres. It was subsequently subdivided into 19 outlots, numbered from 1 to 19, inclusive. The controversy in this case relates to outlot No. 4.

Louis Moran, the owner of the entire farm, made his will in 1825, and died in 1826. He left, surviving, a widow and several children. He had made certain deeds of gift to his other children, aside from his son Louis, which he recognized in his will. All his real estate not deeded to his other children he devised as follows:

1. To his wife, Catherine, for life.
2. To his son Louis for life, charged with the support of one of the testator's daughters.
3. To his daughter-in-law Maria, wife of his son Louis, during widowhood.
4. "The remainder of my said real estate I give and devise to the children of my said son Louis Moran, and, if my said son Louis shall die leaving no children, then to my heirs according to law."

Complainant claims by purchase through mesne conveyances from the devisees of Louis Moran, Sr. The defendants claim under the will as heirs of Louis Moran, Jr. It is conceded that the devise to Maria is void under the statute, but that it does not affect the validity of the remainder of the will.

Louis Moran, Jr., had three children,—the defendant Caroline Nellis, Octavia M. Sylvester, and James L. Moran. Mrs. Sylvester died in November, 1861, leaving one child,

the defendant Mary M. Beck.    James L. Moran is dead,
but the date of his death is unknown. . He had one child,
who died in May, 1886.    In 1845, Catherine Moran, the
widow, and Louis Moran, Jr., and his wife, conveyed by
deed all their interest in the land to the three children of
Louis Moran, Jr., who were then minors.    One J. B. Vallee
was duly appointed their guardian.    In 1847 the guardian
filed a petition in the circuit court for the county of Wayne
in chancery, praying leave to sell their real estate under
the provisions of the statute.    The proceedings taken there-
under were regular, and on November 16, 1849, pursuant
to the decree of the court, a deed was duly executed by
the guardian, conveying the land in question to John A.
Damm and Joseph Grones, from whom complainant derives
his title.    Louis Moran, Jr., died June 20, 1869, leaving
as heirs his two children, James L. Moran and Caroline
Nellis, and his grandchild, Mary M. Beck.    December 11,
1871, Caroline Nellis brought suit in ejectment against one
Jacob Brown, who claimed under the guardian's deed, to
recover possession of "the undivided one-half of lot 4 of
the Louis Moran farm."    No proceeding has ever been
taken in this suit other than to file declaration, and proof
of alleged service thereof upon Brown.    By mistake the
land in the deed to Damm and Grones was erroneously
described as outlot 5, instead of outlot 4.    It is conceded
by the defendants that this was an error apparent upon
the record, and corrects itself.

Complainant claims that, at the time of the deed to
Damm and Grones, the title of this land was vested in the
children of Louis Moran, Jr., and that, the proceeding in
chancery to sell being regular, Damm and Grones became
vested by the deed to them of the entire title in fee-simple.
He also claims that, if this be not so, still he has obtained
title by exclusive and adverse possession for more than 20
years.    The defendants insist that the only estate held by

these children under the will at the time of the guardian's deed was a contingent remainder, and not a vested remainder, and that, while Louis Moran, Jr., lived, it was uncertain whether he would leave any children, and therefore it was uncertain to whom the property would pass. They also insist that the ejectment suit brought by defendant Nellis intercepted the running of the statute of limitations. It is further insisted, on behalf of defendant Nellis, that, the mother of defendant Mrs. Beck having died prior to the death of Louis, Jr., she (Mrs. Beck) took no interest in the reversionary estate, and that the children of Louis surviving him, and not their issue, should take. On the contrary, it is insisted, on behalf of Mrs. Beck, that she inherited the one-third which her mother would have inherited, to take effect upon the termination of the life-estates.

At the date of the will, and also at the death of Louis Moran, Sr., his son Louis had no children. James L. was born in 1832, Caroline in 1838, and Octavia in 1842.

Jacob Brown purchased the land in 1867. The following year he took actual possession of the land under his deed. The proofs established an actual, hostile, open, and notorious adverse possession for more than 20 years previous to the bringing of this suit. This is sufficient to establish in complainant a good title, unless the ejectment suit above mentioned prevents.

1. It has been the policy of the courts to hold these estates vested at the earliest possible moment. Chancellor Kent states the rule as follows:

"No remainder will be construed to be contingent which may, consistently with the intention, be deemed vested." 4 Kent, Comm. 203; *McArthur v. Scott*, 113 U. S. 340.

When Louis Moran, Sr., made his will, his son Louis had no children. He had divided the remainder of his property among his other children in anticipation of death. Manifestly, he intended that the property covered by the

will should go to the issue of Louis, Jr., if he should have any. The contingency he desired to provide against was the death of his son without having had any children. It is unreasonable to say that the testator intended to cut off the direct heirs of his son Louis, should Louis' children die before he did, leaving issue. There is nothing in the provision of this will from which it can be inferred that he intended to divert the estate, in any event, from the direct heirs of the children of Louis, Jr.

Our own statute declares when estates are vested, and when contingent. How. Stat. § 5529. It reads as follows:

"Future estates are either vested or contingent; they are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate; they are contingent whilst the person to whom, or the event upon which, they are limited to take effect remains uncertain."

Upon the birth of James L. Moran (1832), he, under this statute, was the person in being entitled to the immediate right of possession upon the ceasing of the life-estates. He became possessed of a vested estate in remainder, subject to be reopened to let in after-born children. It was twice thus reopened.

It is provided by How. Stat. § 5551, that—

"Expectant estates are descendible, devisable, and alienable in the same manner as estates in possession."

It is the policy of the law in America not to tie up estates. Each of the children of Louis Moran, Jr., possessed an alienable estate, and the grantee of either, in the absence of limitations to the contrary, would succeed to the entire estate of the grantor, and take it subject to be reopened in the same manner as though the title had remained in the original devisee. The life-estates, by purchase, became merged in the vested estate in remainder. What interest was there then outstanding? Manifestly,

none.  Could any portion of their title be divested, and, if so, how?  None of it could be divested except by the birth of another child; but this would not divert the entire title of either, but would only take away so much of the title of each as would give the newly-born heir an equal interest with them.  In our judgment, these conclusions are warranted by the statute above cited, and are sustained by a long list of authorities.  *Doe v. Perryn,* 3 Term R. 484; *McArthur v. Scott,* 113 U. S. 340; *Baker v. McLeod's Estate,* 79 Wis. 534; *Wilson v. White,* 109 N. Y. 59; *Taggart v. Murray,* 53 Id. 233; *L'Etourneau v. Henquenet,* 89 Mich. 428; *Fitzhugh v. Townsend,* 59 Id. 427.

2. Even if we were not correct in the conclusions above reached, still the complainant must prevail, for another reason.  In *L'Etourneau v. Henquenet, supra,* it was expressly held that section 5551, How. Stat., applies to contingent estates, and that when alienated they are subject to the contingency by which they may be defeated.  It follows that, when such estates are held by minors, they may be sold by their guardians under the direction of the court of chancery; otherwise, it would result that, however important and necessary it might be to sell such estates in order to provide a proper support and education for their wards, these estates would be unavailable for that purpose.  Our statute is largely copied from that of New York, and under the like provisions it has there been held that such estates could be sold and conveyed under the direction of the court.  *Dodge v. Stevens,* 105 N. Y. 585; *Jenkins v. Fahey,* 73 Id. 355.  The proceeedings instituted to convey such interests being regular, the guardian's deed issued in pursuance thereof conveyed the entire interests of the children to the grantees.

This disposition of the case renders it unnecessary to discuss or determine the questions of laches or title by adverse possession.

. Decrees affirmed, with costs.

. LONG, MONTGOMERY, and HOOKER, JJ., concurred. MC-
GRATH, C. J., did not sit.