## WATSON *et al. v.* ADAMS *et al.*

1. A testator devised certain land to his wife for her life, and directed that after her death the same be divided into eight equal parts among his eight children, including his son Robert I. Then followed this provision in the will: "Item 6. My son Robt. I., whose whereabouts is not now known by me, and in case my wife should survive him, my will is that his daughter Laura shall be sole heir to his portion of my estate." More than seven years after the probate of the will, during which time Robert I. had not been heard of, his creditors sued out an attachment, and had it levied on his interest in the land, the widow of the testator being still in life. *Held:* (1) That the son, Robert I., took under the will only a contingent fee in remainder to his share of the land, which was not subject to levy and sale. (2) His daughter Laura, upon the death of her father during the lifetime of the widow, owned a vested fee in remainder to this share. (3) Such absence of the son creates a presumption of his death, and any judgment rendered against him upon the attachment proceeding is prima facie void. (4) His daughter Laura has such an interest in the land as authorizes her to institute proceedings to resist the levy and sale of the land, and to cancel any judgment rendered on the attachment.

2. It follows that upon the trial of an equitable petition, to which the daughter is a party plaintiff, praying, among other things, for the cancelation of such judgment, it was error for the court to grant a nonsuit, the testimony for the plaintiffs showing the facts above related.

Submitted February 10, — Decided March 24, 1898.

Equitable · petition. Before Judge Reese. Hart superior court. March term, 1897.

*W. L. Hodges,* for plaintiffs. *A. G. McCurry,* for defendants.

LEWIS, J. In May, 1890, John B. Watson died testate, leaving a widow and eight children, among the children being his son Robert I. Watson. The only portions of the will bearing upon the question involved in this case are embodied in the following items:

"Item 5. After the death of my wife, I will, bequeath, devise, that my real estate, consisting of about four hundred acres of land, be divided into eight equal parts, as nigh as practicable, at the instance of my executors, who will then cause three disinterested persons to value each of my heirs above named by lots, except my son David M., whose lot I bequeath, devise to him during his life, and at his death to be the property of his three children, Mollie, Leila, and Della; he shall have the

right to choose for his children aforesaid the lot on which he now lives, deducting from the valuation the worth of such improvements as he has made or may make on said lot, except my daughter Rhoda E., whose lot I bequeath, devise her during·her life, and after her death to be the property of her two children, John J., and Winnie A. Hewen; and in case the said daughter Rhoda E. settles on a part of my land and improves the same before the death of my wife, then in that case she shall have the right to choose for her children the lot on which she may make improvements, deducting from the valuation the worth of said improvements. Those of my heirs drawing lots of greater valuation than others shall pay· the excess to my executors, who shall pay to those who have drawn lots of less value, so as to make each of my heirs equal.

"Item 6. My son Robt. I., whose whereabouts is not now known by me, and in case my wife should survive him, my will is that his daughter Laura shall be sole heir to his portion of my estate."

In 1870 Robert I. Watson married Elizabeth Shirley, and in 1874 a child, Laura, was born to them, being the only issue of the marriage. In December, 1881, Robert I. Watson deserted his family by going to parts. unknown, which desertion has been continuous, his whereabouts unknown and his existence unheard of since. The widow of John B. Watson, the testator, is still in life. On January 7, 1892, J. A. Adams and B. N. Shirley sued out an attachment against Robert I. Watson, alleging that he was indebted to them as securities for him on two promissory notes of March 19, 1880, for $75 each, besides ten per cent. attorney's fees, and interest; and that he removed from the State and had since continuously resided out of the State. On January 8, 1893, this attachment was levied by the sheriff on an undivided eighth of the 400 acres mentioned in the will. Adams and Shirley filed their declaration in attachment; and pending that case an equitable petition was brought by Elizabeth Watson, and by S. C. Watson as executor of John B. Watson, and by Laura Watson through her next friend, praying that Adams and Shirley be enjoined from proceeding further in the attachment case, alleging that Robert I. Watson would be

legally presumed, on account of his absence for more than seven years, to be dead; that at the time the levy was made he did not own a vested fee-simple title in remainder after the death of Mrs. Annie Watson, but the only interest he ever had under the will of John B. Watson was dependent upon a future contingency, which has never happened, to wit, his survival of Mrs. Annie Watson (his mother); that the property levied on was not the property of Robert I. Watson, but of Laura Watson, and is, therefore, not subject to levy and sale under the attachment·fi. fa.; that plaintiffs had interposed a claim to the land levied on, in behalf of Laura Watson, but that their legal remedies thereunder were incomplete.  The petition further alleged that neither Robert I. Watson nor his estate was indebted to Adams and Shirley, as alleged in the attachment proceeding; and that should it be determined that R. I. Watson was not dead when that proceeding was begun, plaintiffs, being his only heirs at law, are interested in his estate and materially affected by any judgment that may be rendered against the same.  By amendment to the petition it was prayed that the notes upon which the attachment proceeding was based be canceled, together with the judgment rendered on the attachment, so far as concerns the rights of plaintiffs at the time the proceeding was begun.  The defendants denied all the material allegations of the plaintiffs' petition, except the allegations with reference to the attachment proceedings. Upon the trial the plaintiffs introduced the will of John B. Watson, and proved that Robt. I. Watson had been continuously absent, and had been unheard of for a period of more than seven years prior to the issuing of the attachment as alleged in their petition.  They also proved the date of the death of the testator, and that his widow was still in life.  They offered testimony for the purpose of showing that J. A. Adams never paid off the notes, the basis of the attachment proceeding; which evidence was rejected by the court as irrelevant. After the testimony closed, the court, upon motion of defendants' counsel, granted a nonsuit, to which ruling the plaintiffs excepted.

While the will under consideration was very awkwardly

worded, yet it is manifest that it was the intention of the testator that his son, Robert I., should take only a contingent fee in remainder to the land; his interest therein being conditioned upon his surviving his mother. It follows, therefore, that the legacy in the land devised to him by the will was a bare contingency, and that during the lifetime of his mother, there existed in him no present right to a future benefit. Under section 3537 of the Civil Code such a contingency can not be the subject of sale. Hence the levy of the attachment upon Robert I. Watson's interest in the land was void, even if it had been shown that he was then in life. It is equally apparent from the will that it was the intention of the testator that his granddaughter, Laura, should take a vested fee in remainder in the land, upon the death of her father during the lifetime of the widow.

It is a well-settled rule, that where a person goes abroad and is not heard of for a long time, the presumption of continuance of life ceases at the end of seven years from the period at which he was last heard of. Death may be proved by such a presumption, as well as by direct testimony. *Cofer* v. *Flanagan,* 1 *Ga.* 538; *Adams* v. *Jones,* 39 *Ga.* 479. The plaintiffs having made this presumptive proof of the death of the defendant in the attachment, in the absence of any other testimony tending to show that he was still in life, it would necessarily follow that any judgment rendered upon the attachment proceedings was an absolute nullity. There is no provision of law for suing the dead. It further follows upon this proof that the daughter, Laura, owned a vested fee in remainder to the land, and as such owner she had a clear right to resist any seizure of the fee under a void judgment. It is true that, so far as concerns preventing a sale of the land by a fi. fa. issued upon the judgment, her remedy was complete at law by the filing of an ordinary claim; but we think she has a further right, even before any steps are taken to bring the land to sale, to have the judgment thereon canceled as a cloud upon her title. Her ownership of a vested fee in remainder gives her a right to dispose of the same, even during the lifetime of the life-tenant, and an outstanding judgment purporting to be a lien upon this fee

might very seriously interfere with such right of disposition. But apart from all this, if the equitable petition set forth any right of action which was sustained by the proof, the nonsuit was improperly granted upon the ground that she had an adequate remedy at law. Such a question would be a subject-matter of demurrer at the first term of the court, and could not be considered in a motion to nonsuit at the trial term. We, therefore, think that the court erred in granting a nonsuit.

*Judgment reversed. All the Justices concurring.*