## HOWELL *et al. v.* WILSON *et al.*

1. Where a person negotiating for the purchase of land caused the title to be investigated, and refused to buy because the trustee and others specifically named in a trust deed, and others, some of whom might take in remainder under such deed, the same being the deed through which the proposed seller claimed by grant from the trustee, orally proclaimed that only an estate for the life of one of the persons designated in the trust deed as a cestui qui trust passed by the trustee's conveyance, and upon the death of such life-tenant the fee would vest in other persons contemplated in the trust deed, the tenants in remainder being indeterminate until the death of the life-tenant: *Held,* the fact that the negotiating purchaser refused to buy merely because such questions were so raised and urged did not entitle the proposed seller, before the death of the life-tenant, to proceed against the trustee and the life-tenant and possible contingent remaindermen contemplated by the trust deed to quiet his title and remove the alleged claim as a cloud upon it.

2. The ruling announced in the preceding headnote controls the case, and it is unnecessary to deal with other assignments of error made in the bill of exceptions.

FEBRUARY 29, 1912.

Equitable petition. Before Judge Bell. Fulton superior court. September 14, 1910.

Henry L. Wilson, Jack J. Spalding, W. T. Ashford, and Mrs. Susan W. Allgood brought suit against Mrs. Lizzie Ida Howell, Mrs. Eleanor Howell Gunby, Clark Howell Sr., trustee, Edgar Roberts, and Louise Roberts. The substance of the petition, so far as is now material, was as follows: In 1866 N. E. Gardner executed and delivered to C. W. Dill, as trustee, the following conveyance:

"This indenture, made and entered into this the 4th day of July in the year of our Lord one thousand, eight hundred and sixty-six, between Nathaniel E. Gardner, of the county and State aforesaid, of the one part, and Charles W. Dill, of the same place, trustee for Eliza Ida Gardner and Mary Ellen Gardner, children of the said Nathaniel E. Gardner, all of the said county, of the other part; witnesseth, that, whereas the said Nathaniel E. Gardner, being free from debt and being desirous of securing to his said daughters, Lizzie Ida Gardner and Mary Ellen Gardner, and their children by any future husband, a maintenance, support, and education, and being seized and possessed of the estate hereinafter mentioned, being acquired by purchase: Now, therefore, said Nathaniel E. Gardner, for and in consideration of the natural love and affection that he has and bears to his said daughters, Lizzie Ida and Mary Ellen,

and for the purpose of providing a support, maintenance, and education for them, and also in consideration of the sum of ten dollars to him, the said Nathaniel E. Gardner, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, and conveyed and doth by these presents grant, bargain, sell, and convey unto said Charles W. Dill, trustee as aforesaid, and to such other trustee or trustees as may hereafter be appointed in the place and stead of the said C. W. Dill, or his successors, trustees for the said Lizzie Ida and Mary Ellen or their children, the following named property, to wit: [omitting description of the property].    To have and to hold the said named property to the said Charles W. Dill, trustee, as aforesaid, with all the rights, members, and appurtenances thereof, together with all the improvements now being made thereon and such improvements I may choose hereafter to make thereon, and to such other trustees as may hereafter be appointed for the said Eliza Ida Gardner and the said Mary Ellen Gardner, in trust for their sole and separate use, benefit, and behoof for and during their natural lives, and at their deaths or the death of either of my said daughters, to be equally divided share and share alike among the children; but in case that either of my said daughters should depart this life leaving no child or children or the issue of a child or children in life at her death, then and in that event the said property to go to and vest in the other daughter, or in case of her death her child or children or issue of child or children, if there should be any living, but if my other daughter should be dead without child or children or the issue of child or children living, then to go to and vest in any other child or children that I may have living, share and share alike.    I hereby further direct that my two daughters shall own said property in common during their minority or until one or the other of them shall marry; but when they shall attain the age of twenty-one or either the one or the other of them shall marry, I direct that said property shall be divided equally between them by three competent disinterested men, who shall be selected by their trustee for that purpose, who shall enter upon and make a fair estimate of said property, not only in relation to its permanent value, but also in relation to its average proceeds and profits, and when so estimated the property shall be described on a separate list of said appraisers

and folded carefully and put in a hat and my daughters shall draw for the same, the oldest being entitled to draw, and the estate of my daughters shall thus be made separate; and I hereby further direct that Charles W. Dill, trustee as aforesaid, shall advance to my daughters, if necessary, the whole of the income or profits of the property aforesaid, that he shall educate them in good style and furnish them means and facilities to qualify and sustain them in the best society, and that neither of them shall be accountable to the other for any part of the proceeds of said estate, but they each shall use said proceeds as their circumstances may require until said division shall be made, when their estate shall become individual and separate; but before said estate shall be divided, if there should be an accumulation of means sufficient to buy a piece of property of any considerable value, then I direct that said proceeds shall be invested in property of substantial value which will afford a fair and reasonable profit with prospect of permanent increase, which property shall be subject to the same division, limitations, and restrictions as the estate hereinbefore and hereinafter set forth. I hereby further direct and require that no part or portion of the corpus of said estate shall ever be sold until the life-estate is ended, for any purpose whatever, unless it should become less profitable than ordinary investments, or my daughters shall desire to change their residence to some other locality, or for some other alike good and substantial reason; but if such reason should ever exist, the fund shall be reinvested, and before said sale shall be made I hereby direct that full and satisfactory reasons shall be given and clear and sufficient proof be made to the chancellor granting said order that such necessity exists, and that the proceeds of the same when made shall be reinvested in like property, or property as substantial in permanent value and as productive in its yield of profits. I herein again direct that said property at the death of either of my said daughters shall vest in and become absolute fee-simple estate in their child or children, or the issue of their child or children; but if either or both of them should die without leaving child or children or the issue of such child or children living at the time of their death, then said property shall be subject to the limitations and restraints hereinbefore set forth."

In 1872 Dill, as trustee, procured an order at chambers from the judge of the superior court of Fulton county to sell the land con-

veyed to him as trustee, or so much of it as was necessary to satisfy certain judgments which had been rendered against him as trustee on debts against the grantor existing prior to the execution of the deed, to pay taxes due by the trust estate, and to pay for certain necessary repairs made upon the trust property. At a public sale made in pursuance of such order the plaintiff Henry L. Wilson purchased certain portions of the land conveyed in the trust deed. Another person bought some of the land so sold, and subsequently conveyed it to Wilson. There were other purchasers of different parcels of the land at such sale, under whom Spalding, Ashford, and Mrs. Allgood respectively hold under mesne conveyances. Dill resigned the trust in 1874, and Clark Howell Jr. (now Sr.), who had married Lizzie Ida Gardner, one of the cestuis qui trustent, was appointed in his stead, and accepted. Mary E. Gardner, the other cestui qui trust, died in childhood, prior to the resignation of Dill. Mrs. Howell is still in life. In 1878, Howell, as trustee, obtained an order from the judge of the superior court of Fulton county to sell at private sale other portions of the land of the trust estate to Westmoreland, as trustee, and in pursuance of such order a sale was consummated by a deed from Howell, as trustee, to Westmoreland, as trustee, executed and delivered in September, 1878. The parcels of land conveyed to Westmoreland are now respectively owned by Spalding, Ashford and Mrs. Allgood, except small parts since sold by them under warranty deed. The proceedings to obtain this last order and the order itself were by inadvertence never entered on the minutes of the court, or otherwise recorded, and the original papers have all been lost. Mrs. Howell has only one living child, now Mrs. Gunby, her other child having died in infancy. N. E. Gardner had another child, Mary E. Gardner, born about ten years after the execution of the trust deed, who married and subsequently died, leaving as her only heirs at law the defendants, Edgar Roberts and Louise Roberts. The plaintiffs alleged, that they have severally been in adverse possession of the portions of the land respectively held by them under conveyances made by Dill and Howell as trustees, and under mesne conveyances from other purchasers at the sale made by such trustees, for more than seven years, and therefore that they not only have title by lawful conveyance, but also have good prescriptive title to the land so held by them; that one of the plaintiffs, Henry L. Wilson, shortly before

this suit was brought, endeavored to sell a part of the land so held by him, but defendants raised certain questions as to the sufficiency of Wilson's title, saying that there was a question as to whether the title acquired by Wilson and his coplaintiffs under the sales made by the trustees was only an estate for the life of Mrs. Howell, and at her death, under the conveyance by Nathaniel E. Gardner to Dill, as trustee, the fee would vest in Mrs. Gunby or her children, if they survived Mrs. Howell, and if they did not survive her, then it would vest in the defendants, Edgar and Louise Roberts, children of Mary E. Gardner Roberts, or their descendants; and on account of such questions the proposed purchasers declined to buy; and that "said questions so raised constitute a cloud upon the title of" petitioners. The prayers were: (*a*) that the plaintiffs be decreed severally to have a good fee-simple title superior to all claims of de-·fendants, jointly or severally; (*b*) that the trust deed be construed to convey the property in fee simple to the trustee for the uses and trusts therein specified; (*c*) that it be decreed that Dill, as trustee, and Howell, his successor, have always represented the fee-simple estate, but plaintiffs' title tc their respective properties by prescription was good as against the trustees as representing the fee-simple estate; (*d*) that it be decreed that upon the death of Mary E. Gardner the interest of Mrs. Howell became a fee-simple interest, and that she has at all times since represented such interest, and that as to the interest so represented by her the plaintiffs be decreed to have a good prescriptive title; (*e*) that it be decreed that the sales by the respective trustees were valid and under proper orders of court, etc., and that certain deeds set forth in the petition were executed in pursuance of the orders of court, and that the deeds operated to convey the fee-simple title as fully as if it was owned and held by N E. Gardner at the time of executing the trust deed; and lastly that process issue, and that plaintiffs have all other and further relief in law and equity to which they might be entitled under the facts of the case All of the defendants demurred to the petition generally and specially. The demurrers were overruled. After the evidence was submitted, the court directed a verdict in favor of the plaintiffs. The defendants excepted to both rulings just stated.

*Dorsey, Brewster, Howell & Heyman,* for plaintiffs in error.
*Alexander C. King* and *E. M. & G. F. Mitchell,* contra.

ATKINSON, J.　In behalf of Wilson and others (plaintiffs in the trial court, defendants in error here), counsel contend that the facts alleged in the petition authorized the plaintiffs to maintain an action: (a) for removal of a cloud from title; (b) for injunction against interference with the enjoyment of their respective properties; (c) to perfect and complete the means by which the right, estate, and interest of the plaintiffs to their real property may be approved and secured, and to remove all obstacles to its enjoyment.　We fail to see that the facts alleged would authorize a court of equity to afford any such relief, and conclude that the court erred in refusing to dismiss the petition on general demurrer.　The plaintiffs assert no interest except such as is traceable to the trust deed, and do not allege that the defendants assert any except such as is founded on the same instrument.　It is true, that, in addition to record title traceable to the trust deed, the plaintiffs assert in severalty titles by prescription by reason of possession under separate conveyances to them executed by the respective trustees, and other intermediate conveyances; but in order to show that prescription was operative against the defendants during the period of adverse possession, the terms of the trust deed were relied upon as showing that the fee was always vested, in the one instance, in the trustee, or, in the other instance, in Mrs. Howell, subject to be divested by the happening of a subsequent event, and that in either event suit should have been instituted before the expiration of the prescriptive period had it been desired to question the effect of the conveyances by the trustees or the right of the plaintiffs to titles by prescription.　The plaintiffs were in peaceable possession, and it was not alleged that the defendants had themselves entered or otherwise committed a trespass upon the property which would authorize the plaintiffs to sue either in ejectment or for any waste or other wrong to the property; but the object of the suit was to construe the trust deed in a particular way and to establish and declare the several titles of the plaintiffs, thereby concluding the defendants from setting up any claim to it in the future.　It is not alleged that the defendants had ever done anything tending to disturb the possession or enjoyment of the property by the plaintiffs, but the complaint is that recently, while the plaintiff Wilson was negotiating a sale of part of the property purchased by him, the defendants raised certain questions as to the title held by Wilson,

the same being common to the other plaintiffs, these questions being of such character as to constitute a cloud upon the titles of all the plaintiffs. The questions so raised and claimed to constitute a cloud upon the title of plaintiffs were: (*a*) that Dill, as trustee, was not seized of the property in fee simple, and a sale by Dill, under the orders of the court, did not operate to convey the fee-simple title, but at most only an estate for life of Mrs. Howell; that the remainder estate was contingent, and, the remaindermen being not then determinable, the sale by the trustee did not extinguish the estates of possible remaindermen under the deed; (*b*) that certain of the deeds executed by Dill, as trustee, do not show that they were made under order of the court authorizing them, and that all evidence thereof rests in parol, and would in a short time be lost. There was no effort to cancel as a cloud on title any particular document which was being exhibited by defendants, and could be none, because any possible claim of interest by defendants was under the trust deed, the same instrument upon which plaintiffs' titles were founded. Hence, the claim of defendants at most could have amounted to no more than oral assertions of title. Equity would not interfere to silence such oral assertions of title, made in that manner, on the ground that they amounted to a cloud upon title; nor, the plaintiffs being in possession, would it assume jurisdiction to decide in thesi the status of plaintiffs' title with reference to such questions before the death of the life-tenant, when those who would take in remainder were not determinable and possibly not in existence. The case of *Waters* v. *Lewis*, 106 *Ga.* 758 (32 S. E. 854), was one in which the judgment was reversed because the court refused to dismiss the petition on general demurrer. The plaintiff alleged that she was the owner of certain property, of which she was then in possession, but to which defendant had asserted an oral claim. After reciting the history of her own title, and the claim of the defendant, it was further alleged that the latter claim was fraudulent and without foundation, and operated to cause a cloud upon the plaintiff's title, and had been and was being vexatiously and injuriously used against plaintiff by defendant, who had instituted both civil and criminal proceedings against plaintiff; that the witnesses within whose knowledge the facts relied upon to sustain plaintiff's title were of great age, and their evidence was likely to be lost by death of the witnesses, and

that plaintiff could not immediately and effectively protect herself and maintain her rights by any course of proceeding open to her, except by resort to a court of equity. The prayers were, that the defendant and all persons claiming under him be enjoined from entering upon the land or asserting a claim to it, and that a decree be granted. declaring the claim of defendant fraudulent and void. It was held that the mere claim to or assertion of ownership in the property is not such a cloud upon title as can be removed by equitable proceedings, and that under the allegations there was no ground for equitable relief by injunction. This ruling has been approved in the case of *Weyman* v. *Atlanta*, 122 *Ga.* 539 (50 S. E. 492), and in *Mayor &c. of Gainesville* v. *Dean*, 124 *Ga.* 750 (53 S. E. 183). To the same effect see Devine *v.* Los Angeles, 202 U. S. 313 (26 Sup. Ct. 652, 50 L. ed. 1046); Sulphur Mines Co. *v.* Boswell, 94 Va. 480 (27 S. E. 24); Newman *v.* Newman (Tex. App.), 86 S. W. 635. In the latter case it.is said: "Where the bill discloses no more than an unquiet and unfounded apprehension as to the validity of his title, and a false and clamorous assertion of a hostile title in the defendant, equity will not interfere to quiet the one or silence the other."

The case of Miles *v.* Strong, 62 Conn. 95 (25 Atl. 459), was a bill to remove a cloud upon title The facts alleged were: Selah Strong by his will devised to Ernest Strong Miles, his grandson, certain real estate, subject to the provision: "The foregoing devises to the said Ernest Strong Miles are subject to the charges aforesaid, to him and his heirs forever, provided however that if he, the said Ernest Strong Miles, shall die before he attains his majority or without leaving lawful issue surviving him, and without having disposed of all the lands by this will devised to him, either by deed or by will, then, and in either of these events, it is my will that all said lands herein devised to the said Ernest Strong Miles, and not by him disposed of, shall descend to and be distributed among my heirs at law, and those who legally represent them." The land was properly set out and distributed to him in 1882, and the estate fully administered and settled. The land distributed to Ernest Strong Miles was subject to the provisions of the will as set out above. In 1890, after he became twenty-one years old and after the charges had ceased to exist, he conveyed to his father in trust for himself most of the land. Subsequently, in order to secure any

benefit or profit from the land, it was necessary to sell a portion of it, and the trustee contracted to sell a portion thereof to one Mrs. Smith. But before the purchase had been consummated, some of the heirs of Selah Strong, Mrs. Smith learned, were asserting a claim to the land, under the will, and she declined to purchase the land. A demurrer was filed and overruled, and the case was appealed. The claims made by the heirs at law of Selah Strong, and alleged to constitute a cloud on the title of the plaintiffs, were: "After this bargain (to sell the land to Mrs. Smith) was made, the defendants claimed and since have claimed that the will and distribution give them some interest in the land, and that any deed of the same from the plaintiffs or either of them would only convey the same subject to such interest of the defendants. This claim of the defendants came to the knowledge of Mrs. Smith and the plaintiffs, but the exact claim or nature of the interest or title of the defendants, as claimed by them, was not made known to the plaintiffs or Mrs. Smith. In consequence of this claim of the defendants Mrs. Smith refused to complete the purchase and accept a deed of the premises, and the plaintiffs lost the sale thereof." In the course of the opinion the court said: "The principal question . . is whether upon the facts stated the plaintiffs were entitled to judgment. The . . claim made by the defendants is in fact based upon the will. . . It will be observed all parties claim under the same . . provisions of that will. They all assert the genuineness and validity of the will. . . Whether the plaintiffs have the absolute title which they claim, or whether the defendants have the contingent interest which they assert, depends upon the construction of the will. If any cloud whatever exists upon the plaintiffs' title, it exists solely because of the will, and not because of the record of the distribution or of the oral claims and assertions made by the defendants. These are based upon and derive all their force and effect from the will, and without that they would clearly constitute no cloud upon the plaintiffs' title which a court of equity would ordinarily remove. It is the will then, and the will alone, that casts a cloud upon the plaintiffs' title, if such a cloud exists; and whether or not such cloud exists depends solely upon the construction of the will. . . If the construction contended for by the defendants is the correct one, then the claim made by them does not constitute a cloud upon the plain-

tiffs' title, because on that supposition the claim is a valid one. On the other hand, if the plaintiffs are right in the construction, then there is no cloud which a court of equity will relieve against; for on that supposition the will itself shows on its face, and without the aid of extrinsic evidence, that the claim of the defendants has no foundation, and in such cases the general rule certainly is that a court of equity will not interfere to remove such a cloud. Munson *v.* Munson, 28 Conn. 582; Alden *v.* Trubee, 44 Id. 455; Cornish *v.* Frees, 74 Wis. 490 [43 N. W. 507]."

Clearly there were no sufficient allegations to authorize the court to assume jurisdiction for the purpose of declaring that the "questions raised" in the manner alleged constituted a cloud upon title, or to authorize the grant of injunction. But the plaintiffs contended further that equity will interpose for the purpose of construing the deed and settling the question of title by decreeing the fee to be vested in the plaintiffs. On the contrary, it is contended that equity will not interfere for such purpose, the defendants not being in possession, and not having made any effort to disturb that of the plaintiffs or instituted any legal proceedings to question the validity of plaintiffs' title. In Georgia there is no statute expressly conferring equity jurisdiction in such cases, and in the absence of statute equity will not, as a general rule, assume jurisdiction to afford such relief under the conditions alleged. Cross *v.* De Valle, 1 Wall. 5-17 (17 L. ed. 515) ; May *v.* May, 167 U. S. 310 (17 Sup. Ct. 824, 42 L. ed. 179) ; Mansfield *v.* Mansfield, 203 Ill. 92 (67 N. E. 497) ; Torrey *v.* Torrey, 55 N. J. Eq. 410 (36 Atl. 1084) ; Frank *v.* Frank, 88 Ark. 1 (113 S. W. 640, 19 L. R. A. (N. S.) 176, 129 Am. St. R. 73) ; Hart *v.* Darter, 107 Va. 310 (58 S. E. 590, 15 L. R. A. (N. S.) 599) ; Heptinstall *v.* Newsome, 146 N. C. 503 (60 S. E. 416).

In the case of Miles *v.* Strong, supra, referring to the contentions of counsel, it was said that "their claim is that they are entitled to ask for the construction of this will for the purpose of settling a dispute about a legal title to land. . . We think this can not be done. . . Every dispute between parties relating to the legal title to real estate, arising under wills, deeds, or other written instruments of title, would furnish a pretext to obtain a construction of the instrument in a proceeding of this kind. We have no statute, as in many States, governing this matter, and we

know of no practice under which such a result can be obtained in a proceeding like the one at bar."

The assignment of error upon the refusal of the judge to dismiss the petition on general demurrer having presented the controlling question upon which the judgment is reversed, it is unnecessary to deal with the questions as to the misjoinder of parties, and other grounds of special demurrer, and the direction of a verdict.

*Judgment reversed. All the Justices concur, except Lumpkin, J., disqualified, and Hill, J., not presiding.*