## HARRIS et al. v. McDONALD, executrix.

A deed from one who is apparently a stranger to the paramount title, and who is not shown to have ever been in possession of the premises conveyed, is insufficient to make out a prima facie case showing title in the grantee claiming thereunder.

An administratrix in possession, and while acting as such, can not claim adversely to the estate of her intestate.

One in possession of land and claiming it as his own may fortify his title or buy his peace of adverse claimants as often as they may appear, and without being estopped to deny the title of such subsequent vendors.

Upon the death of the husband and father intestate the title to his realty vests in his children, subject only to the widow's right to take a child's part or have dower assigned therein; and unless it affirmatively appears that within the time prescribed by law the widow elected to take a child's part, no presumption arises that she ever had any vested interest in such realty.

That the widow elected to take a child's part in the estate of the husband may be affirmatively shown by circumstances as well as by direct evidence.

Under a will devising a two-thirds interest in the estate of the testatrix to testatrix's daughter " for her use during her natural life, and at her death to her children should she leave any, and if she should leave no children or descendants of a child or children, then to [testatrix's] brother [naming], should he be in life, or, if he is dead, then to his children him surviving, share and share alike," the children of testatrix's daughter, all of whom were born some years after the death of testatrix, took a contingent two-thirds remainder interest in the estate.

Such contingent estates of minors can not be sold by their guardian under order of the court of ordinary.

An estoppel must be by one's own act. Hence contingent remaindermen are not estopped by their guardian's deed because they did not move to set aside the guardian's sale within a reasonable time (seven years) after they attained their majority, the life-tenant or holder of the precedent estate being still in life.

A request in writing (attested in this case by two witnesses only) to destroy a will is an effort to revoke the will by written instrument; and in view of the Civil Code, § 3918, " an express revocation by written instrument must be executed with the same formality and attested by the same number of witnesses as are requisite for the execution of a will," that is, three subscribing witnesses.

Mere direction to destroy a will not followed by actual destruction will not effect a revocation, in view of the Civil Code, § 3919, which provides that " An express revocation may be effected by any destruction or obliteration of the original will, or a duplicate, done by the testator, or by his direction, with an intention to revoke."

A judgment of the court of ordinary admitting a will to record is not void because it is not affirmatively shown that such judgment was based on a written petition to probate the will. The court of ordinary is a court of general jurisdiction, and proceedings prior to judgment will be presumed.

A judgment of the court of ordinary admitting a will to record, based upon an affidavit of one of the subscribing witnesses to the will and an agreement by the devisees that the will be probated, is not void because one of the devisees (the sole heir at law of the testatrix) was a minor at the time of the making of the agreement, it appearing that such devisee and heir at law enjoyed the estate devised to her by the will for more than seven years after her majority.

Applying the principles ruled above, the pleadings and evidence raised issues which should have been submitted to the jury for determination; and the court erred in directing a verdict for the defendant.

No. 2159. SEPTEMBER 13, 1921. ADHERED TO ON REHEARING, OCTOBER 1, 1921.

Ejectment.    Before Judge Harrell.    Calhoun superior court. June 7, 1920.

*E. M. & G. F. Mitchell* and *B. W. Fortson,* for plaintiffs.

*Pope & Bennet* and *M. C. Edwards,* for defendant.

GEORGE, J.    This was an action of ejectment.    On the conclusion of the evidence the court directed a verdict for the defendant and against the plaintiffs for the premises in dispute. The plaintiffs filed a motion for new trial, which was subsequently amended.    To the judgment overruling the motion the plaintiffs excepted.    The plaintiffs sought to recover upon the theory that their grandmother, Mrs. Sarah M. Harper, was the owner of the land at the time of her death in 1872, having purchased it from William H. Davis in 1870, and that under the third item of the will of Mrs. Sarah M. Harper a two-thirds interest in the land was devised to her daughter, Lula N. Harper, who afterwards became the mother of the plaintiffs, " for her use during her natural life, and at her death to her children should she leave any, and if she should leave no children or descendants of a child or children then to [testatrix's] brother, McCormick Neal, should he be in life, or if he is dead then to his children surviving, share and share alike;" that plaintiffs, who were born some years after the death of their said grandmother, took a contingent two-thirds remainder interest in the land, that interest being contingent upon their mother leaving them in life at the time of her death; that their mother afterwards married Henry R. Harris Jr., and in 1887 conveyed the land to defendant's testator, J. J. McDonald; that the life-tenant, plaintiff's mother, died in 1917, leaving surviving her the plaintiffs in this case, who thereupon became seized of a two-thirds interest in the land in fee.    To prove their case the plaintiffs introduced: (1) a warranty deed from William H. Davis to Sarah M. Harper, dated January 4, 1870, conveying to her the premises in dispute for a consideration of $6,000;  (2) a certified copy of the will of Mrs. Sarah M. Harper, and the probate thereof;  (3) a warranty

deed from Lula Harper Harris, the life-tenant under the will, as to a two-thirds interest in the land, to defendant's testator, J. J. McDonald, dated January 28, 1887, conveying to him for a consideration of $3500 the premises in dispute; (4) proof of the marriage of Lula Neal Harper to Henry R. Harris Jr., in 1873, and that plaintiffs were the sole surviving children of Lula Harper Harris; and (5) proof of the death of Lula Harper Harris on June 11, 1917, and the filing of this suit on November 13, 1917. The deed from William H. Davis to Sarah M. Harper and the deed from Lula Harper Harris to defendant's testator, J. J. McDonald, came from the custody of the defendant in response to a notice to produce, and both deeds were recorded on November 3, 1902. The defendant also introduced a deed from Henry R. Harris Jr., the plaintiff's duly qualified guardian, to E. H. Thornton, dated December 8, 1888, conveying to him for a consideration of $255 a one-fourth and a one-twelfth undivided interest in the premises in dispute. This deed contained the following recital: "The interests hereby conveyed being the entire interest in said land given to said children by their grandmother, Mrs. Sarah M. Harper." The defendant also introduced in evidence a deed from E. H. Thornton to defendant's testator, J. J. McDonald, dated December 10, 1888, and conveying to J. J. McDonald, for a consideration $1166.66 a one-third undivided interest in the premises in dispute. All deeds appearing in the record and introduced both by plaintiffs and defendant were recorded on November 3, 1902, in the same deed book, consecutively paged. To meet the prima facie case thus made out the defendant undertook to show: (1) that Robert G. Harper, a citizen of Newton county and the husband of Sarah M. Harper, was in possession of the land at the time of his death in January, 1868, and that the whole title then passed to his sole heir at law, Lula Neal Harper, afterwards Lula Harper Harris, the mother of the plaintiffs, and that consequently her deed to J. J. McDonald conveyed the fee, the defendant contending that Mrs. Sarah M. Harper, under whom plaintiffs claimed, never had any title to the land, because, as the widow of Robert G. Harper, she was not an heir at law, and there was no evidence to show that she had elected to take a child's part of his estate; (2) that William H. Davis (who conveyed to Mrs. Sarah M. Harper, under whom

plaintiffs claimed) never had title to nor possession of the land, and that consequently his deed to Sarah M. Harper did not convey title, and Mrs. Sarah M. Harper, the administratrix of Robert G. Harper, could not prescribe under the deed; (3) if Sarah M. Harper ever had any interest in the land, that interest passed upon her death to Lula Neal Harper, her sole heir at law, the defendant contending that the alleged will of Sarah M. Harper had been annulled by her written direction to destroy the same after its execution, and that the alleged probate of the will, based upon an agreement made between Lula Neal Harper, a minor, and McCormick Neal, if binding at all, was binding only between Lula Neal Harper and McCormick Neal, and that the afterborn children of Lula Neal Harper could claim no benefit thereunder by way of estoppel or otherwise, and that the alleged probate was ineffectual because no written application for the probate of said will was made to the court of ordinary; (4) if plaintiffs ever had any interest in the land, the same was divested by the sale of that interest, made by their duly qualified guardian to E. H. Thornton, who afterwards conveyed said interest, if any, to J. J. McDonald, the defendant contending that the interest of plaintiffs, if any, was a vested interest, under the will, and could be sold by the guardian, but if said interest was a contingent interest it was nevertheless divested by the legal sale made by the guardian, since a sale by a guardian is not adverse to but for the benefit of the estate represented by him, and if the sale by the guardian was illegal, the plaintiffs were estopped, because they did not move to set aside the sale within seven years after the youngest of them had attained majority; and (5) the defendant really claimed under Lula Harper Harris as the sole heir at law of Robert G. Harper.

William H. Davis, so far as disclosed by the record, never had title to the land. He never had possession of the land. "A deed from one who is apparently a stranger to the paramount title, and who is not shown to have ever been in possession of the premises conveyed, is insufficient to make out a prima facie case showing title in the grantee claiming thereunder." *Bleckley v. White,* 98 *Ga.* 594 (3), 597 (25 S. E. 592); see also *Nesmith v. Hand,* 128 *Ga.* 508 (57 S. E. 763). Mrs. Sarah M. Harper could not prescribe under the deed, because she was the adminis-

tratrix of the estate, and while acting as such could not claim adversely to the estate. Moreover, she died within less than two years after the execution of the deed. Was the defendant estopped to deny title in William H. Davis? The fact that the defendant produced under notice the deed from William H. Davis to Sarah M. Harper does not show that the defendant necessarily claimed under the deed. "Where in the trial of an action for the recovery of land the plaintiff relied upon the contention that he and the defendant held under a common grantor, which was denied by the defendant, proof by the plaintiff that the defendant had in his possession a chain of title to the premises in dispute, one link of which was a conveyance from the person claimed by plaintiff to be such common grantor, was not, without more, sufficient to authorize a verdict for plaintiff, as the defendant, for aught that appeared, may have held a valid title from a different source." *McConnell* v. *Cherokee Mining Co.,* 114 *Ga.* 84 (39 S. E. 941). It is settled that a defendant in ejectment may rely upon two sources of title. When, however, a deed comes from his custody and is admitted in evidence against him, the burden is cast upon him to show a better title than the deed conveys, if his title under the deed is not sufficient to meet the case made by the plaintiff, unless the defendant expressly denies that he claims under the deed. *Brinkley* v. *Bell,* 126 *Ga.* 480, 483 (55 S. E. 187). See also *Barnes* v. *Maddox,* 136 *Ga.* 164 (71 S. E. 129). J. J. McDonald, the grantee of Lula Harper Harris, was dead. The defendant could not, therefore, show by the direct testimony of J. J. McDonald that he claimed the whole title under Lula Harper Harris as the sole heir at law of Robert G. Harper. It appears, however, without dispute, that there was a paramount title in Robert G. Harper, who died in possession of the land. One in possession of land and claiming it as his own may fortify his title, or buy his peace of adverse claimants, as often as they may appear, and without being estopped to deny the title of such subsequent vendors. *Yerby* v. *Gilham,* 147 *Ga.* 342 (94 S. E. 246). If Mrs. Sarah M. Harper elected to take a child's part of the estate of Robert G. Harper, she became the owner of a one-half undivided interest in the lands in dispute. Mrs. Sarah M. Harper qualified as administratrix of Robert G. Harper on or about August 5, 1868. Plaintiffs

introduced a certified copy of her petition to the court of ordinary, made within the first year of administration, for an order "permitting her to carry on the farm for the benefit of the heirs, herself and one child of said deceased," and of the order of said court granting the petition at the November term, 1868. Plaintiffs also introduced a certified copy of Sarah M. Harper's petition (filed October 4, 1869) to the court of ordinary for "leave to sell the land for distribution among the legatees and for payment of debts," reciting that "a fair division of said land can not be had among the heirs," and the order of court at the November term, 1869, granting the same. "There is no presumption of law that a widow will elect, or has elected, to take a child's part in the estate of her husband. *Jossey* v. *Brown*, 119 *Ga.* 758. It must affirmatively appear that she elected to take a child's part within the time prescribed by law. This may appear by an election in writing, duly signed, filed, and recorded in the office of the ordinary, but this is not the only method of proving the fact of such election. The fact of election may be shown by circumstances establishing the same, as well as by direct evidence. If the circumstances are such as to establish that an election has been made in time, it is as much affirmatively established as if there were direct evidence to that effect." *Rountree* v. *Gaulden*, 128 *Ga.* 737, 740 (58 S. E. 346). It is settled in this State that upon the death of the husband and father intestate the title to his realty vests in the children, subject only to the widow's right to take a child's part, or have dower assigned therein, and unless it affirmatively appears that within the time prescribed by law the widow elected to take a child's part, no presumption will arise that she ever had any vested estate in such realty. *Snipes* v. *Parker*, 98 *Ga.* 522 (25 S. E. 580); *Farmers Banking Co.* v. *Key*, 112 *Ga.* 301 (37 S. E. 447); *LaGrange Mills* v. *Kener*, 121 *Ga.* 429 (49 S. E. 300); *Heard* v. *Kenney*, 146 *Ga.* 719 (92 S. E. 211).

The application of the widow as the personal representative of the estate, for permission to carry on the farm for the benefit of the heirs at law (the widow and one child), made within the first year of administration, is a circumstance from which the jury would be authorized to infer that the widow elected to take a child's part in the estate. While the application for permission

to sell was made after the expiration of the first year of the administration, it is nevertheless of some probative value, and tends to show that the widow had elected to take a child's part. The fact that Mrs. Harper purchased the land from Davis and dealt with the land as her own also tends to show that she had elected to take a child's part in the estate. If the estate of Robert G. Harper was solvent, it was to the interest of the widow to take a child's part. There is no presumption that the estate was insolvent.

If Mrs. Harper elected to take a child's part in the estate of her husband, then she had a vested interest in a one-half undivided interest in the land belonging to his estate. The third item of the will of Mrs. Sarah M. Harper is as follows: " After paying my debts and deducting the property mentioned in the 2nd item of this my last will and testament, I give and bequeath to O. H. Jones in trust for my daughter, Lula N. Harper, two thirds of my estate for her use during her natural life, and at her death to her children should she leave any; and if she should leave no children or descendants of a child or children, then to my brother McCormick Neal, should he be in life, or, if he is dead, then to his children him surviving, share and share alike.'' The testatrix died in 1872. At the date of her death Lula N. Harper was unmarried and had no children. Lula N. Harper afterwards intermarried with Henry R. Harris Jr., and six children were born to her, one of whom died intestate during the lifetime of the life-tenant, and left no children but left a widow. The other five children survived the life-tenant (who died in 1917) and are the plaintiffs in this case. If the devise had been simply " and at her death to her children," the remainder would have vested in the children as they were born. But the superadded words, " should she leave any," made the remainder contingent. Until the death of Lula N. Harper it could not be ascertained whether she would leave any children. If she had survived her children, none of them would have ever acquired any interest. There was a limitation over to McCormick Neal if Lula N. Harper " should leave no children or descendants of a child or children," but the remainder was " to her children should she leave any." Until the death of Lula N. Harper it was an uncertainty whether she would leave children at her death; the devise, " to her children should she leave any," is the exact equivalent of the.

expression "such child or children, they being the heirs of her body, that she may leave in life." Construing the language last above quoted, this court has held the remainder to be contingent. *Smith* v. *Smith,* 130 *Ga.* 532 (61 S. E. 114, 124 Am. St. R. 177). The vesting of the remainder is made dependent upon the event of the remainderman surviving the life-tenant. The superadded words in the will under construction manifest the intention of the maker to vest the remainder only upon the contingency of the remainderman being in life at the time of the death of the life-tenant, and serve to distinguish the provision of the will under construction from the provisions of the instruments construed (for example) in the following cases: *Crawley* v. *Kendrick,* 122 *Ga.* 183 (50 S. E. 41, 2 Ann. Cas. 643); *Cooper* v. *Mitchell Investment Co.,* 133 *Ga.* 769 (66 S. E. 1090, 29 L. R. A. (N. S.) 291); *Burney* v. *Arnold,* 134 *Ga.* 141 (67 S. E. 712); *Milner* v. *Gay,* 145 *Ga.* 858 (90 S. E. 65); *Gibbons* v. *International Harvester Co.,* 146 *Ga.* 467 (91 S. E. 482); *Cock* v. *Lipsey,* 148 *Ga.* 322 (96 S. E. 628). It is to be noted that the will under construction contains no divesting clause, or clause of defeasance, as did the will construed in *Sumpler* v. *Carter,* 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274). There are no words of substitution in the will under construction, as in the will construed in *Fields* v. *Lewis,* 118 *Ga.* 573 (45 S. E. 437). In the will under construction in that case there were words of substitution, and the superadded words were held to apply to the substituted devisees. In the case of *McDonald* v. *Taylor,* 107 *Ga.* 44 (32 S. E. 879), there was no uncertainty as to the person. The remainderman was named. No other person could ever take as remainderman. The superadded words in the will in that case were probably considered as words of defeasance, and upon this theory it was properly held that the remainder was vested. In no case decided by this court has the language of this will been construed as giving a vested remainder. The analogous cases hold the remainder to be contingent. See *Griswold* v. *Greer,* 18 *Ga.* 545; *White* v. *Rowland,* 67 *Ga.* 546 (44 Am. R. 731); *Watson* v. *Adams,* 103 *Ga.* 733 (30 S. E. 577); *Crawford* v. *Clark,* 110 *Ga.* 738 (36 S. E. 404); *Isler* v. *Griffin,* 134 *Ga.* 192, 195 (67 S. E. 854). See also *Fleming* v. *Hughes,* 99 *Ga.* 444 (27 S. E. 791). We do not overlook the rule of construction that

if there be doubt as to whether a remainder is vested or contingent the remainder will be construed as vested rather than contingent, and as vesting at the earliest opportunity. We do not overlook the distinction between vesting in right and taking effect in possession or enjoyment, pointed out in many of our cases. On the other hand no favor to a vested interest can defeat the plain intention of the will in controversy, and, as we construe the will, those children of Mrs. Lula Harper Harris who were in life at the death of Mrs. Lula Harper Harris took a contingent two-thirds remainder interest in the estate of the testatrix.

While the question seems to be an open one in this State, we are of the opinion that the contingent estate of the minor children of Mrs. Lula Harper Harris could not be sold by their guardian under order of the court of ordinary. It has been held that a guardian may sell a vested remainder under an order granting leave to sell the land, his ward having no estate in the land except the remainder so sold. *Wallace* v. *Jones,* 93 *Ga.* 420 (5) (21 S. E. 89); *Webb* v. *Hicks,* 117 *Ga.* 338 (43 S. E. 738). It has also been held that a contingent remainder is' not the subject of a levy and sale. *Mattox* v. *Deadwyler,* 130 *Ga.* 461 (60 S. E. 1066); *Harber* v. *Nash,* 126 *Ga.* 777 (55 S. E. 928). 'In *Watson* v. *Adams,* 103 *Ga.* 733 (30 S. E. 577), it was held that a contingent remainder is not subject to an attachment. It is agreed that the cases cited above, to the effect that no legal sale of a contingent remainder ad invitum by the sheriff under execution can be made, are not necessarily controlling upon the question presented. *Williams* v. *O'Neal,* 119 *Ga.* 178 (45 S. E. 978), is not applicable. See *Jolly* v. *Lofton,* 61 *Ga.* 154. The Civil Code, § 4181, reads as follows: "A future interest or estate may be conveyed by a deed; but it must operate to transfer the title immediately, or the instrument will be testamentary and revocable." It is obvious that this provision of the code is not in point. On the contrary, section 4117, which in part declares that "A bare contingency or possibility can not be the subject of sale, unless there exists a present right in the person selling, to a future benefit," is more nearly in point. In *Watson* v. *Adams,* supra, it was said: "The legacy in the land devised to him by the will was a bare contingency, and during the lifetime of his mother there existed in him no present right to a future benefit. Under section

3537 of the Civil Code [Civil Code of 1910, § 4117] such a contingency can not be the subject of sale." .While in certain circumstances a court of equity has jurisdiction to decree a sale of land, including every possible interest of contingent remaindermen, such jurisdiction is founded largely upon the fact that a sale of such property including such interest can not be had under an order from the court of ordinary. Compare *Cooney* v. *Walton,* 151 *Ga.* 195 (106 S. E. 167) ; *Donaldson* v. *Donaldson,* 151 *Ga.* 208 (106 S. E. 172) ; *Ethridge* v. *Pitts,* 152 *Ga.* 1 (108 S. E. 543). Under statutes providing that expectant estates are descendible, devisable, and alienable in the same manner as estates in possession, contingent estates of minors may be sold by their guardians under order of the court. Hovey *v.* Nellis, 98 Mich. 374 (57 N. W. 255). Under the New York statute a contingent remainder in fee may be sold. Dodge *v.* Stevens, 105 N. Y. 185 (12 N. E. 759).

We are also of the opinion that the plaintiffs were not barred because they did not move to set aside the guardian's sale within a reasonable time (seven years) after they attained their majority. Until the death of the life-tenant it could not be determined whether they would have any interest in the land. See *Howell* v. *Wilson,* 137 *Ga.* 710 (74 S. E. 255). While contingent remaindermen may maintain an equitable suit to prevent waste (see *Kollock* v. *Webb,* 113 *Ga.* 762 (2), (39 S. E. 339), this court has never decided that such remaindermen can maintain a suit to cancel a deed as a cloud upon their title. If the plaintiffs themselves had executed a deed to Thornton, it would have been necessary for them to move to cancel the same within seven years after they attained their majority. *Nathans* v. *Arkwright,* 66 *Ga.* 179. The conveyance of a contingent remainder is upheld upon the principle of estoppel. *Isler* v. *Griffin,* supra. In order to give rise to the estoppel the conveyance must have been the act of the person subsequently asserting title. An estoppel must be by one's own act. There is no evidence tending to show that plaintiffs ratified the sale by accepting or receiving the purchase-price.

The remaining question, therefore, is whether the will was revoked by Mrs. Harper's written direction to cancel it after its execution, and, if not so revoked, whether the will was legally pro-

bated. It appears that Mrs. Harper, after the execution of the will, left the same with the ordinary of Fulton county, the county of her residence. On March 18, 1872, Mrs. Harper, then in the State of New York, addressed the following letter to the ordinary: " On receipt of this letter you will please turn over to Mr. John Neal, Sen., the will which I made on January 9th, 1872, or about that date, and if it is recorded, cancel the record, as I have decided not to make that disposition of the property. Mr. Neal will please destroy the will, as it is worthless, not being according to my desire. Please preserve this letter, and it shall be authority for both yourself and Mr. Neal to act as desired. This change of intention on my part is made from deliberation, and not from any influence, whatever, exercised by others." The letter was signed by Mrs. Harper, and was witnessed by two witnesses only. The written request to destroy the will is nothing more than an effort to revoke the will by written instrument. Under the Civil Code, § 3918, " An express revocation by written instrument must be executed with the same formality and attested by the same number of witnesses as are requisite for the execution of a will." The Civil Code, § 3919, provides that " An express revocation may be effected by any destruction or obliteration of the original will, or a duplicate, done by the testator, or by his direction, with an intention to revoke." Under this section it is necessary that the will be actually destroyed or obliterated. Mere direction to destroy, not followed by actual destruction, will not effect a revocation. The suggestion is made that Mrs. Harper did not lose her right to destroy the will because the public officer failed in his duty. It was not the official duty of the ordinary to destroy the will. This question is in principle controlled by *Howard* v. *Hunter*, 115 *Ga.* 357 (41 S. E. 638, 90 Am. St. R. 121).

The judgment of probate is attacked upon the ground that no petition to probate the will appears in the evidence. It appears that an application for letters of administration on the estate of Mrs. Sarah M. Harper was filed in the court of ordinary of Fulton county. It was alleged in the application that Mrs. Harper died intestate. McCormick Neal objected to the grant of letters of administration, upon the ground that Mrs. Harper died testate, and attached to his objections the will of Mrs. Harper. In the cir-

cumstances aforesaid, it can not be held that there was no peti-
tion, or the equivalent of a petition in writing, to probate the
will. Even if there were no petition, the court of ordinary is a
court of general jurisdiction. The judgment admitting the will
to record is all that is necessary. The petition and other proceed-
ings prior to judgment will be presumed. The judgment can in
no event be collaterally attacked. *Patterson* v. *Lemon,* 50 *Ga.*
231, 236; *Medlin* v. *Downing Lumber Co.,* 128 *Ga.* 115 (57 S.
E. 232); *Hooks* v. *Brown,* 125 *Ga.* 122 (53 S. E. 583); *Churchill*
v. *Jackson,* 132 *Ga.* 666 (64 S. E. 691). The case of *Fischesser*
v. *Thompson,* 45 *Ga.* 459, holding that a proceeding in the court
of ordinary not based on a written petition is void, was reviewed
and in effect overruled in *Barclay* v. *Kimsey,* 72 *Ga.* 725.

It is insisted that the probate of the will is void, because based
upon an agreement made between Lula Neal Harper (afterwards
Lula Harper Harris) and McCormick Neal. It appears that
plaintiffs' mother, at the time the agreement was made, was only
eighteen years old, but she held the life-estate under the will
from 1872 to 1887, when she conveyed to the defendant's testate.
At the date of this conveyance she was thirty-three years old.
Although a minor at the time the agreement was made, it would
seem that she was bound by the agreement, under the Civil Code,
§ 4233. It further appears that the will was actually probated
by the judgment of the ordinary. It was probated on the affidavit
of a subscribing witness to the will. In addition, the agreement
between Lula Neal Harper and McCormick Neal was made the
judgment of the court. This agreement was expressly made for
the purpose of settling a family controversy. Probate in com-
mon form becomes conclusive after the lapse of seven years; and
if after the lapse of seven years an heir is still a minor, he has
four years after the arrival of age within which to call the pro·
bate in question. *Sutton* v. *Hancock,* 118 *Ga.* 436 (45 S. E. 504).
Upon a careful review of the evidence in this case we are of the
opinion that the probate of the will of Mrs. Sarah M. Harper
was not void for any of the reasons urged by the defendant in
error — certainly not upon an inspection of the record. A valid
judgment admitting the will to record is of course conclusive on
the question of revocation discussed above.

The rulings above made sufficiently cover the assignments of

error on the admissibility of evidence in so far as those assignments of error are meritorious. In view of those rulings, it follows that the court erred in directing a verdict for the defendant, and in subsequently overruling the motion for new trial.

*Judgment reversed. All the Justices concur, except Atkinson and Hill, JJ., disqualified.*