REFINANCE CORPORATION OF GEORGIA *v.* WILSON *et al.*

No. 11431. NOVEMBER 12, 1936.

*L. C. & J. W. Underwood* and *Luther Roberts,* for plaintiff. *Saffold & Sharpe,* for defendants.

HUTCHESON, Justice. An execution issued from the city court of Lyons, Toombs County, on July 27, 1935, in favor of the Refinance Corporation of Georgia and against Mrs. Alice Wilson and

Richard C. Wilson. On December 4, 1935, it was levied on certain described property known as the D. Q. Morrison place, "as the property of Mrs. Alice Wilson for and during her widowhood and for and during her natural life, and one half the remainder interest after the widowhood and the death of Mrs. Alice Wilson, as the property of R. C. Wilson, . . and being in the possession of the defendants Mrs. Alice Wilson and R. C. Wilson." Mrs. Alice Wilson, as administratrix de bonis non with the will annexed of the estate of W. L. Wilson, filed a claim, and the issue thus made was tried before the judge, without a jury, on the following agreed statement of facts: W. L. Wilson, a resident of Montgomery County, Georgia, died testate on August 18, 1917. His will was probated in solemn form in the court of ordinary of Montgomery County, and admitted to record at the November term, 1917. Both the executors named in the will have died. One of them, Richard C. Wilson, the son of the testator, died on January 5, 1936. Mrs. Alice Wilson, widow of testator, was duly appointed administratrix de bonis non cum testamento annexo of the estate of the testator. On August 18, 1917, a short time after the death of the testator, she bore a child named William L. Wilson, who is now eighteen years of age and living with his mother. Richard C. Wilson never married. The testator died seized and possessed of the land levied on. All the interests the defendants in execution have or ever had in said land is that devised to them as legatees under the will of the testator. This land is that referred to in item 4 of the will as the D. Q. Morrison place. Besides Richard C. Wilson, William L. Wilson, and his widow, the testator left surviving three daughters, Ruth, Nell, and Helen. Ruth died about three years ago, leaving one child. Mrs. Morris, referred to in the will as Grandma, is still living, but has moved away from the D. Q. Morrison place and has forfeited her rights therein. Richard C. Wilson used his expected half interest in the land devised to him under the will, by mortgaging the land to the plaintiff in execution. The will of W. L. Wilson, attached to and made a part of the agreed statement of facts, was executed on August 8, 1917, and is as follows:

"I, W. L. Wilson, of Montgomery County, State of Georgia, but at the present time a patient in the Park View Sanitorium at

Savannah, Ga., make and publish this my last will and testament, hereby revoking all others heretofore made by me.

"Item 1. I direct that all my just debts be paid from my insurance money, all necessary expenses incident to my funeral to be paid without delay. I want my body buried by the side of my mother, or on the same row by the side of my brother.

"Item 2. I give, bequeath, and devise to my beloved wife, Alice Wilson, for and during her widowhood and for and during her natural life only, my entire estate both real and personal, all notes and accounts and choses in action. She to take and manage the same by the help of our son Richard, using the rents and profits for the maintenance and support of our children and no one else; except the little one-horse farm and the old house where Grandma resides on the D. Q. Morrison place in Montgomery County, Ga. I want Grandma to be not disturbed in the use of these buildings and the use of the little field. I want her to remain there the balance of her life. This does not mean she will have the right to move away and rent this land. The privilege I am giving her is a personal one, and she and no other is to get the benefit of it.

"Item 3. Now if my wife marries again, she then must encourage our son Richard to take hold and manage my estate; so it has always been my desire to have him take charge of what business I have.

"Item 4. When our youngest child has reached its majority and debts have been paid, I want a final division of my real estate as follows: I want the place known as the D. Q. Morrison place to be given to my son Richard C. Wilson. If our approaching babe is a boy, he will be entitled to one half of the place; but if a girl, I desire that she be cared for out of the rest of my estate, as I do not want this home place divided except it be between two boys.

"Item 5. I direct that in the final division of the rest of my real estate, that when the girls are disposed to want this class of property they keep it; them who do not will be entitled to the value of land in money.

"Item 6. I hereby nominate and appoint my brother in law John A. Coursey, together with my son Richard C. Wilson, my executors to execute this my last will. Richard will be of age in a few years, and by this time I hope he will have had such experi-

ence as will justify him to continue without bothering his Uncle John."

The questions presented for determination are: (1) Whether under the will the widow took a life-estate in the land of the testator, and (2) whether the son Richard took a vested or a contingent remainder in the Morrison place devised in item 4. In construing wills the paramount and essential rule is to ascertain the intention of the testator and give complete effect thereto, provided it is not unlawful; and in order to arrive at the intention of the testator every portion of the will should be considered in discovering that intention. *Ivey* v. *Davis*, 175 *Ga.* 607 (165 S. E. 605). While cases involving the construction of wills may guide us in the general rules of construction, they should not be considered as binding authority unless the cited case is in every respect directly in point, and agreed in every respect with the will to be construed. *Comer* v. *Citizens & Southern National Bank*, 182 *Ga.* 1, 5 (185 S. E. 77). "Precedents, or adjudged cases, are of but little authority, and of dangerous application, in deciding upon the intention of a testator; the construction depends so much on each case, upon the character of the testator, the terms he employs, and all the surrounding circumstances." *Cook* v. *Weaver*, 12 *Ga.* 47 (3). For general rules in regard to construction of wills see Redfearn on Wills and Administration of Estates, 236, § 129; Code, § 113-806. Let us now examine the will before us, to determine the interest in the estate of the testator devised to the widow under the will. In the first sentence of item 2 the widow is apparently devised an estate for life and widowhood in the entire estate, both real and personal. A life-estate or an estate for widowhood carries with it the right to a full use and enjoyment of the property devised, during the period of time such estate is in existence, and such full use and enjoyment means the use and enjoyment of the income derived from the estate devised. *Gairdner* v. *Tate*, 110 *Ga.* 456 (35 S. E. 697); *Ayer* v. *Chapman*, 147 *Ga.* 715 (95 S. E. 257). As we construe the will, it is not necessary to determine whether the estate apparently devised in item 2 is one for life or widowhood. The apparent devise of an estate for widowhood and life is inconsistent with the provision immediately following, to wit: "She [the widow] to take and manage the same by the help of our son Richard, using the rents and profits for the maintenance

and support of our children and *no one else.*" (Italics ours.) Inasmuch as the rents and profits are to be used for the maintenance and support of the children and no one else, such use is inconsistent with the devise of an estate for life or widowhood, in so far as the right to present enjoyment of such estate is concerned, and the apparent estate for life and widowhood in the entire estate is limited by a trust or charge thereon for the sole benefit of the children of the testator. Code, § 108-103. Particularly is this true as regards the real estate of the testator, as items 4 and 5 of the will make provision for a final division of the real estate upon the youngest child reaching majority; and this provision is further evidence that the testator did not intend to devise an estate for life or widowhood in the realty. "If two clauses in a will are so inconsistent that both can not stand, the later will prevail." *Rogers* v. *Highnote,* 126 *Ga.* 740 (56 S. E. 93). So we conclude that the apparent devise to the widow of the entire estate for life and widowhood, in the light of the subsequent provisions of the will, shows that the intent of the testator was to devise a life-estate or an estate for widowhood in the personalty, subject to the uses of the trust therein for the benefit of the children of the testator, and at the most only a right of habitation in the realty, with legal title in the realty in the widow and the son Richard as trustees for the children of the testator. This being true, the widow had no life-estate in the realty, and the levy of the execution upon the purported life-estate of the widow in the land levied on is invalid, and the levy falls.

We now come to a discussion of the second question involved; that is, whether the son Richard has a vested-remainder interest in the Morrison place which is subject to levy and sale (*Wilkinson* v. *Chew,* 54 *Ga.* 602), or a contingent remainder not subject to levy and sale (Code, § 96-102; *Watson* v. *Adams,* 103 *Ga.* 733, 30 S. E. 577). "An estate in remainder is one limited to be enjoyed after another estate is determined, or at a time specified in the future." Code, § 85-701; *City Council of Augusta* v. *Radcliffe,* 66 *Ga.* 469; *Burch* v. *Burch,* 23 *Ga.* 536, 548; *Heard* v. *Brawner,* 28 *Ga.* 357; *Watson* v. *Adams,* supra. "A contingent remainder is one which is limited to take effect on an event or condition which may never happen or be performed, or which may not happen or be performed until after the determination of the preceding

particular estate." *Griswold* v. *Greer*, 18 *Ga.* 545. The law favors vested remainders; and it is an established rule that the court never construes a remainder to be contingent when it can be taken to be vested. *Vickers* v. *Stone*, 4 *Ga.* 461; *Fields* v. *Lewis*, 118 *Ga.* 573, 575 (45 S. E. 437); *Lumpkin* v. *Patterson*, 170 *Ga.* 94 (6) (152 S. E. 448). "Various tests have been suggested for determining whether in a given case a future estate is a vested or a contingent remainder. One of these tests is given by Fearne in his work on Remainders, viz.: 'The present capacity of taking effect in possession, if the possession were to become vacant, . . distinguishes a vested remainder from one that is contingent.' " *Schley* v. *Williamson*, 153 *Ga.* 245, 255 (111 S. E. 917). An estate is vested where there is an immediate right of enjoyment or a present fixed right of future enjoyment. It is the present capacity of taking effect in possession, if the possession were to become vacant, that distinguishes a vested from a contingent remainder. *Wilbur* v. *McNulty*, 75 *Ga.* 458, 463; *Burch* v. *Burch*, 23 *Ga.* 536, 548. A leading distinction is that if futurity is annexed to the substance of the gift, the vesting is suspended; but if it appears to relate to the time of payment only, the legacy vests instanter. 1 Jarman on Wills, 760; *Allen* v. *Whitaker*, 34 *Ga.* 6, 9; *Cogburn* v. *Ogleby*, 18 *Ga.* 56, 58. When a future time for the payment of a legacy is defined by the will, the legacy will be vested or contingent, according as, upon construing the will, it appears whether the testator meant to annex the time to the payment of the legacy or to the gift of it. 2 Williams on Executors, 1051; *Bowman* v. *Long*, 23 *Ga.* 242, 246.

In item 2, devising the precedent estate, there is no mention of and no provision for the disposition of the remainder interest in the estate. This fact is important in determining the intention of the testator as to the time of the vesting of the remainder interest of the Morrison place in the son Richard. It is in item 4 that the testator first makes mention of the remainder interest, and it is in that item that the remainder interest in the estate is first devised. The devise is made in the following language: "*When* our youngest child reaches its majority and debts have been paid, I want a final division of my real estate as follows: I want the place known as the D. Q. Morrison place *to be given* to my son Richard C. Wilson." (Italics ours.) Does the son Richard, under the language

of this item of the will, have a *present* capacity of taking effect in possession upon the cessation in the future of the precedent estate; that is, at the time the youngest child reaches majority? Ordinarily this language might be subject to such construction; but we are of the opinion that the intention of the testator, as evidenced by the omission to devise the remainder estate at the time of devising the precedent estate, and as evidenced by the particular language of item 4 of the will, was that the time mentioned therein should refer to and annex to the gift as well as the time of taking effect in possession, and that Richard Wilson took no vested-remainder interest in the Morrison place. He having died before the time of the vesting of such interest in him, he took none; and therefore the levy on such property of his purported half undivided interest therein in remainder was invalid. While in some cases the fact that the income from the remainder devised is given in trust to the remainderman for his maintenance and support is a controlling factor showing an intention that the remainder vest immediately with the right to future enjoyment (*Bowman* v. *Long,* supra; *Gillespie* v. *Ellis,* 168 *Ga.* 790, 149 S. E. 221), we do not think such ruling is controlling in the present case. The income in the present case was from the entire estate, and was to be used for the maintenance and support of all the children of the testator, showing an intention that the particular property devised in remainder to Richard C. Wilson was to be kept intact with the rest of the estate of the testator and not separated therefrom until the time of final division. See *Cogburn* v. *Ogleby,* supra. Whether or not the later part of item 4 of the will, "If our approaching babe is a boy, he will be entitled to one half of the place; but if a girl, I desire that she be cared for out of the rest of my estate, as I do not want this home place divided except it be between two boys," is of such a nature as to raise by implication cross remainders between the two sons of the testator (*Smith* v. *Usher,* 108 *Ga.* 231, 233, 33 S. E. 876), in that it fails to provide for a disposition of the one-half remainder interest of the son Richard in the event of his death before a final division of the estate, the expected babe being a boy, it is not necessary to decide under the issues made in the present record.

In view of the above construction placed upon the will, the court did not err in finding the property not subject to the execution.

*Judgment affirmed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*

RUSSELL, C. J., and BECK, P. J., concur in the result.