The caption of the act approved August 17, 1920 (Ga. L. 1920, p. 245), now embodied in the Code, §§ 113-1721, 113-1722, 113-1723, is: "An act to authorize executors, administrators, and trustees, where there is not sufficient personal property to pay the debts of any estate, to sell, for the purpose of paying such debts, land *Page 345 
left by will providing that said land be kept together until the beneficiaries thereunder reach the age of twenty-one years and providing that said land can not be sold until the happening of some contingency which rotates [relates] to the future; to provide for the passing of the title of the land so sold; to prescribe the mode, method, and procedure necessary in case of such sale, and to provide that in all other respects than as set out in this act such sale shall be made as provided in sections 3064 and 3065 of the Code of Georgia; and for other purposes." In the act it is declared "that from and after the passage of this act it shall be lawful, in all cases where property is left by will heretofore, as [or] hereafter made, providing for the keeping together and holding the real estate named in such will until the beneficiaries under such will shall arrive at the age of twenty-one years," the real estate may be sold in stated circumstances for payment of debts. "Provided, however, that before any such sale shall be finally consummated, such executor, administrator, or trustee shall file in the office of the clerk of the superior court . . a petition in writing addressed to the judge of the superior court, . . setting forth" specified details of the transaction. Also, that all such sales "shall be made" as provided for sales for re-investment by guardian, and "to be approved and confirmed by said judge by appropriate order; and the entire proceedings shall be recorded on the minutes of the superior court, and properly indexed." In the instant case the will in question is the same as that involved in Refinance Corporation of Georgia v. Wilson, 183 Ga. 336 (188 S.E. 707). Held:
1. The above statute does not provide a cumulative, but, on the contrary, the exclusive method by which executors, administrators, and trustees may obtain authority to sell land for the payment of debts when such land is by will devised with the requirement that said land be kept together until the beneficiaries thereunder reach the age of twenty-one years.
2. When said act applies, a sale by virtue of an order of the court of ordinary, granted under the Code, § 113-1706, does not divest the title of the devisees.
3. That the will in the instant case was executed and probated before the enactment of the act above referred to is no reason why its provisions are inapplicable in the instant case; the application to and the order of the ordinary, and the sale thereunder, having taken place since the date of the approval of the act.
4. The amendment objected to was properly allowed.
5. Under the record, the foregoing rulings are decisive of the case. The petition stated a cause of action.
Judgment affirmed. All the Justicesconcur.
 No. 12967. NOVEMBER 29, 1939.
William L. Wilson and others, the children and a child of a deceased child of W. L. Wilson, deceased, brought suit against Mrs. Alice C. Wilson, his widow, and the Mutual Benefit Life Insurance *Page 346 
Company, alleging as follows: W. L. Wilson, a resident of Montgomery County, Georgia, died testate on August 8, 1917. His will was probated in solemn form, and a copy thereof is set forth. Plaintiff William L. Wilson was born on August 18, 1917, a short time after the death of his father, W. L. Wilson, who at the time of his death owned, among other property, the land described in the petition. His son Richard C. Wilson became of age in 1929, and qualified as executor of the will, and was executor from 1929 until his death on January 5, 1935. As executor he applied to the court of ordinary of Montgomery County for leave to sell the land here involved, for the alleged purpose of paying debts, and at the June term, 1929, of that court an order granting leave to sell was entered. On July 2, 1929, after advertising, he offered the land for sale and purported to knock it off to Mrs. Alice C. Wilson for $8500. Pursuant to said sale he executed and caused to be recorded a deed purporting to convey said land to her. A copy of the deed is exhibited. This deed was never delivered to and accepted by Mrs. Wilson, but was held by Richard C. Wilson and kept among his individual papers until his death. On September 14, 1929, Mrs. Wilson executed and delivered to the Mutual Benefit Life Insurance Company a deed to secure an indebtedness of $3200, a copy of which deed is set forth. The deed from Richard C. Wilson to Mrs. Alice C. Wilson is void, for the reason that it was part of a scheme between them to divest petitioners of their remainder interest in said land, and of their right to support and maintenance from the rents thereof, as provided by the will of W. L. Wilson, all of which was known to the insurance company, at the time it made the loan and accepted the security deed from Mrs. Wilson. The will of W. L. Wilson provided that all his debts be paid from his insurance money, and they had been paid in full long before the application to sell was filed; and this was known or could have been known by the Mutual Benefit Life Insurance Company at the time it accepted the loan deed from Mrs. Wilson, had its attorneys and agents making the abstract and negotiating the loan used ordinary diligence and made inquiry about payment of the debts of said estate. The order of the ordinary granting leave to sell is void, because of the fraudulent representations made to the ordinary by Richard C. Wilson, to the effect that there were debts of the estate, there being in fact no debts. The will provided that the debts be paid out of the *Page 347 
insurance money, and required the estate to be kept together until August 18, 1938, when the youngest child, William L. Wilson, reached his majority.
It was alleged that the deed from the executor to Mrs. Wilson was void, for the following reasons: (a) By the terms of the will Richard C. Wilson and Mrs. Wilson were made cotrustees. (b) The conveyance by the executor to Mrs. Wilson was an effort to put the title in her, so as to divest the remainder interests of petitioners in the land, which fact was known to the officers and agents of the insurance company and could have been known by the exercise of ordinary diligence. (c) Such purpose was known by the attorneys and agents of the company at the time it made the loan and accepted the security deed. (d) The will limited the use of the rents and profits from the land to the support and maintenance of petitioners alone. (e) The sale and purchase was a transaction between trustees of the same property; no part of the consideration named in the deed from the executor to his mother was paid, and the estate received no benefit from the purchase; all of which was known to the defendant company at the time it accepted the loan deed; petitioners received no part of the consideration named in the deed from the executor to Mrs. Wilson, received no benefit from the sale, and have done nothing to authorize or ratify the sale; the proceeds of the loan made by the insurance company were used by Richard C. Wilson to pay his individual debts; all of which was known to the attorneys and agents of the company at the time it accepted the loan deed, and it acquired no title, right, or lien on said land by virtue of the loan deed, as against petitioners, for the reason that it took with notice of their rights under the will, and with notice that the order to sell was obtained by fraud; and the deed from Richard C. Wilson to Mrs. Wilson was without consideration and a part of a fraudulent scheme by Richard C. Wilson and Mrs. Wilson by reason of the following facts: (a) B. P. Jackson, attorney, represented Richard C. Wilson in his application for leave and order to sell said land, and knew that the estate owed no debts at that time, and that the leave and order was obtained and sale made for the purpose of paying an individual obligation of the said Richard C. Wilson. (b) B. P. Jackson, attorney, represented the insurance company in abstracting the records and certifying the abstract for the purpose of obtaining the loan from the insurance *Page 348 
company to Mrs. Wilson and knew the purposes for which the proceeds of the loan were to be used, and that the sale of the land by Richard C. Wilson as executor to Mrs. Wilson was a colorable scheme entered into between them for the purpose of raising money for the individual use and benefit of Richard C. Wilson. (c) The loan was made on an abstract of title showing the will of W. L. Wilson and the title under which Mrs. Wilson claimed, and the loan was made with notice of petitioners' rights and the limitations placed on the title to the said land by the terms of said will. (d) The insurance company knew, or could have known by proper diligence, that Richard C. Wilson, executor, had made and posted no bond as would be required by the terms of said will at the time he made application for leave and order to sell said land and advertised and sold to Mrs. Wilson.
It was alleged further: Since Mrs. Wilson obtained the loan from the insurance company, she has appropriated the rents and profits from the land to the payment of the interest on the loan, thus depriving petitioners of their support and maintenance therefrom, and will continue so to do unless prevented by order of the court of equity. The principal of the loan is past due, and the insurance company is threatening to foreclose and sell the land, and will do so unless prevented by an order of the court. The deeds from Richard C. Wilson to Mrs. Wilson and from Mrs. Wilson to the insurance company are clouds on petitioners' title to the remainder interest in the land and should be surrendered and canceled by decree of the court. If the insurance company is so permitted, it will exercise the power of sale, execute and have recorded a deed, and thus create a further cloud on the title. The executor committed waste in handling and managing the estate. Since the death of Richard C., Mrs. Wilson has been appointed administratrix de bonis non, with the will annexed, and is committing waste, and will continue to do so unless prevented by order of the court. If the insurance company is permitted to foreclose the security deed, it will do so and take charge of and appropriate the property to its use and deprive petitioners of their right of support and maintenance from the rents and profits during the remainder of the time in which the estate is required by the will to be kept together, and the company should be prevented from so doing by proper order of the court. The title to the land is in the estate of W. L. Wilson, deceased, and by his will *Page 349 
it is required to be kept together until the youngest child reaches his majority on August 18, 1938. Petitioners are without remedy at law, and a court of equity should take jurisdiction and protect their rights, and should prevent the sale of the land until a final trial and hearing of the facts alleged. They pray that Mrs. Wilson be enjoined from paying to the insurance company money belonging to the estate; that the company be enjoined from foreclosing the security deed, and from interfering with petitioners' rights to the rents and profits from the land; that on final hearing the deeds from Richard C. to Mrs. Wilson and from Mrs. Wilson to the company be canceled; and for general relief.
Demurrers were presented by the defendant company. An amendment by the plaintiffs was allowed, in substance as follows: The deeds referred to are void and convey no title as against the plaintiffs, because:
1. The appointment of Richard C. Wilson as executor of the estate of W. L. Wilson, deceased, is void and of no legal force and effect, for the following reasons: (a) Mrs. Alice C. Wilson was duly appointed and qualified as administratrix, with the will annexed, of the estate of W. L. Wilson, in the court of ordinary on November 5, 1917, and continued as such until May 6, 1929, when she resigned. Her resignation was accepted by order of the court of ordinary, and she was discharged. Richard C. Wilson was appointed executor under the will. These judgments of the court of ordinary were void, for the reason that the heirs at law of W. L. Wilson, and the legatees under his will, W. L. Wilson, Mrs. Nell Wilson Smith, Mrs. Helen Wilson Couch, and Mrs. Ruth Wilson Macon, were not served with any formal written notice or citation of Mrs. Wilson's petition for discharge, as provided in the Code of 1910, § 4095. Such lack of notice to the heirs and legatees appears on the face of the record of said proceedings. (b) Richard C. Wilson's appointment as executor being void, his sale of the land to Mrs. Wilson was void and conveyed no title of the estate of W. L. Wilson.
2. The sale of said land by Richard C. Wilson, as executor, to Mrs. Wilson, was void and the deed made by him in connection with said sale was void and passed no title out of the estate of W. L. Wilson, for the reason that in making said sale and deed there was no compliance with the act of the legislature approved August *Page 350 
17, 1920 (Ga. L. 1920, p. 245). (a) The will of W. L. Wilson made his widow and his children the principal beneficiaries, devising the land in question with other real property to the petitioners, and to Richard C. Wilson jointly, and provided that all of his real estate be kept together and not divided until all of said children reached the age of twenty-one years. By reason of these provisions of said will, under the terms of said act of August 17, 1920, no portion of the real estate of W. L. Wilson could be sold for the purpose of paying debts, except by order and approval of the superior court of the county in which the will was probated, and in which the administration of said estate was pending in 1929; and said sale and deed by Richard C. Wilson as executor, not having been approved by said court under the terms of said act, are void and ineffective to pass any title to the land out of the estate of W. L. Wilson. (b) At the time of said sale by the executor, petitioners Helen Wilson Couch and William L. Wilson were less than twenty-one years of age. (c) Said sale and conveyance by Richard C. Wilson as executor being void, the deed by Mrs. Alice C. Wilson to the insurance company is also void and ineffective to convey any title as against the plaintiffs in this suit.
3. The judgment of the court of ordinary authorizing Richard C. Wilson as executor to sell the land for the purpose of paying debts is void and of no legal force and effect, for the reason that said court was without jurisdiction to order the sale of said land for such purpose, because of the fact that said land was devised in the will of W. L. Wilson to petitioners, William L. Wilson, Mrs. Nell Wilson Smith, Mrs. Helen Wilson Couch, and Mrs. Ruth Wilson Macon (mother of petitioner Hal Macon Jr.), and Richard C. Wilson, jointly, with the provision that said property with all other real estate devised in said will be kept together until all the beneficiaries reached the age of twenty-one years; and Mrs. Helen Wilson Couch and William L. Wilson, were less than twenty-one years of age at the time said order was granted. Said order being void and of no legal force and effect, the sale and deed by Richard C. Wilson to Mrs. Alice C. Wilson, in pursuance of said order, were void and of no legal force and effect, and the deed by Mrs. Alice C. Wilson to the insurance company is also void and of no effect to convey any title as against petitioners. In view of the provisions of said will for keeping said land together until all legatees reached twenty-one *Page 351 
years of age, the superior court had sole and exclusive jurisdiction to order a sale of the land for the purpose of paying debts.
4. That the date of birth of each child of W. L. Wilson, deceased, was as follows: Ruth Wilson Macon, June 22, 1904; Nell Wilson Smith, February 18, 1906; Helen Wilson Couch, March 29, 1912; Richard C. Wilson, May 16, 1902; William L. Wilson, August 23, 1917. Mrs. Ruth Wilson Macon died on the 28th day of February, 1935.
Over objection and demurrer by the defendant company the court allowed a second amendment in substance as follows: The insurance company acquired no title, right, or lien on said land against petitioners by virtue of the loan deed from Mrs. Wilson for the reasons that said defendant is not a bona fide holder under said deed without notice of the rights of petitioners, and that said defendant had full notice and knowledge of all of the rights of petitioners, as well as all the fraud affecting the executor's deed to Mrs. Wilson, at the time said defendant acquired title under said deed. B. P. Jackson, attorney at law, of Vidalia, Georgia, represented and acted as agent and attorney at law for the defendant insurance company in all the transactions whereby Mrs. Wilson obtained from the insurance company said loan secured by the loan deed. Jackson as agent and attorney for the insurance company conducted and carried on for and in behalf of that company all negotiations and transactions between said company and said Mrs. Wilson in connection with the making and closing of said loan; and in connection with said loan prepared for the company an abstract of the title conveyed in said loan deed, and approved the title to said land for the purpose of said loan, and said loan was made by said company on the faith of the abstract of title furnished by Jackson as its attorney, and on his advice and certificate Jackson knew that the estate of W. L. Wilson owed no debts at the time the order in the court of ordinary was obtained, and knew that R. C. Wilson as executor fraudulently represented to the court of ordinary that there were such debts, as a part of his fraudulent scheme to use said land for his own benefit by sham sale to Mrs. Wilson. This knowledge was acquired by Jackson in the course of his employment as attorney and agent for the insurance company before the loan was closed. Jackson as attorney and agent for the insurance company knew that the sale by R. C. Wilson, *Page 352 
executor, to Mrs. Wilson and the deed by him to her were shams and a part of the scheme of Wilson to appropriate said land to his own use and benefit, and he knew that the sale and deed were mere pretenses and shams and that no consideration was passed for the said deed and sale, and that it was never intended that any consideration be paid or passed from Mrs. Wilson to him. This knowledge was acquired by Jackson in the course of his employment as attorney and agent for the insurance company for the purpose of handling, making, and closing said loan to Mrs. Wilson.
Amendment further alleged: Jackson, as attorney and agent for the insurance company for the purpose of making said loan to said Mrs. Wilson, read the will of W. L. Wilson and was fully acquainted with it, including the provisions for payment of the debts of W. L. Wilson out of his insurance money, and for making Mrs. Wilson a cotrustee of the property of said estate, and giving her the power and duty of joint control and management of said property in connection with the executors, for the benefit of the minor heirs. Jackson in the course of said employment knew also, before the loan was closed, that Mrs. Wilson was the mother of R. C. Wilson. Jackson as attorney and agent for the insurance company, for the purpose of making said loan to Mrs. Wilson, handled the checks made by it in disbursement of said loan, and knew in the course of so doing that the proceeds of the loan did not go to Mrs. Wilson but that they went directly to R. C. Wilson and were used by him for the purpose of paying his individual debts. Jackson had notice and knowledge of the purpose for which said checks were to be used, before the time they were disbursed by him. Such knowledge of Jackson was sufficient to give him notice that R. C. Wilson had some interest in said land, and this knowledge, coupled with his knowledge of the kinship between R. C. Wilson and Mrs. Wilson, his knowledge of the contents of the will of W. L. Wilson, and the fact that said land had apparently recently been sold by R. C. Wilson as executor to Mrs. Wilson, and that the record title of said land was in Mrs. Wilson by reason of said apparent sale, all of which Jackson knew at the time, was sufficient to charge Jackson as agent and attorney for the insurance company, and the insurance company because of said agency, with full notice of the fraud being perpetrated on petitioners in said transaction. The knowledge of Jackson of the close kinship between R. C. Wilson and Mrs. *Page 353 
Wilson, and of her duties as cotrustee, comanager and custodian of said property under the will, was sufficient to put Jackson on inquiry as to the fairness and circumstances of the sale from R. C. Wilson as executor, to Mrs. Wilson, and because of Jackson's knowledge of the relationship between R. C. Wilson and Mrs. Wilson, and because of his knowledge of her duties in relation to said property under said will, the insurance company holds said property subject to the rights of petitioners arising out of the fraud of R. C. Wilson and Mrs. Wilson, in connection with the pretended sale of said property as herein set out.
Further amendment: R. C. Wilson as executor knew, at the time he applied to the court of ordinary for leave to sell said land, that the estate of W. L. Wilson owed no debts, but he fraudulently alleged the existence of such debts in his petition for leave, for the purpose of giving said court jurisdiction of said application and as a part of his fraudulent scheme to appropriate the land to his own use, in fraud of the petitioners. The sale of said land from R. C. Wilson as executor to Mrs. Wilson, and the deed from him to her, dated July 2, 1929, attached as an exhibit are shams and pretenses, for the reason that there was never any actual bona fide sale of said land from him to her, in that there was never any consideration paid for said sale, nor was it ever intended by said parties that any consideration pass between them, but said sale and deed were merely parts of a scheme of R. C. Wilson to transfer said land from the estate of W. L. Wilson without any consideration or benefit to said estate for said transfer, and by said transfer to appropriate said land to his own use and benefit, all in fraud of the petitioners as heirs of said estate.
The insurance company demurred on grounds following: No cause of action alleged; no equity in the petition; the allegations are but conclusions; no facts are set forth to show that the judgment of the court of ordinary is void; that judgment having been rendered more than three years before the filing of the petition, this suit is barred by the statute of limitations; the petitioners are guilty of laches; their claims are based on stale demands; no union of joint acts of fraud is charged against this defendant and Mrs. Wilson; nonjoinder of parties and nonjoinder of causes of action; it is not alleged that this defendant was a party to the fraud alleged to have been practiced upon the ordinary; the petition is but *Page 354 
a collateral attack on a judgment of the court of ordinary; the ages of the heirs at law of W. L. Wilson at the time the will was probated, and at the time of the passage of the order granting leave to sell, are not given. The defendant demurs specially, because the petition fails to allege any facts to charge this defendant with any knowledge that Jackson, the attorney representing the estate, obtained by virtue of his representation, or that this defendant is charged with any knowledge of fraud alleged to be perpetrated by Jackson, Richard C. Wilson, or Mrs. Wilson, Jackson having been employed to represent said estate, and any knowledge he received by virtue of said representation is not imputable to this defendant. The demurrer further made following contentions: The allegations of the amendment are not germane, or consistent with the original alleged cause of action; the amendment adds a new and distinct cause of action; the allegations of the amendment are duplicitous to the allegations in the petition; a joinder in one count of two distinct demands based on different allegations of fact; the act of 1920 (Ga. L. 1920, pp. 245-8) has no application; said act merely gives a cumulative remedy to the law already existing; the will is to be construed as of its date and probate, the year 1917; copies of the proceedings relating to the appointment of Alice C. Wilson as administratrix cum testamento annexo, her resignation as such, and the appointment and qualification of Richard C. Wilson as executor, should be set forth.
The demurrers were overruled. Mrs. Wilson answered admitting all the material allegations of the petition. The insurance company answered, denying any knowledge of any fraud, but admitting that its title was by virtue of a deed from a purchaser of the property at the sale under the order of the ordinary. No evidence was introduced. On the pleadings a verdict for the petitioners was directed, and a decree of cancellation was entered. The insurance company excepted, assigning error on the overruling of its demurrers, on the direction of the verdict, and on the decree.