In the Matter of Christopher John McLOUGHLIN, Bankrupt.

Marion B. STOKES, Trustee, Appellant-Cross Appellee,

v.

TRUST COMPANY OF GEORGIA, Appellee-Cross Appellant.

No. 74–1428.

United States Court of Appeals, Fifth Circuit.

Jan. 27, 1975.

26. *See* Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

J. Timothy White, Atlanta, Ga., for appellant-cross appellee.

Cary S. Tye, Thomas S. Carlock, Atlanta, Ga., for McLoughlin.

Henry J. Miller, Orinda D. Evans, Timothy S. Perry, Atlanta, Ga., for appellee-cross appellant.

Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

COLEMAN, Circuit Judge.

The facts of this case are simple and undisputed. In 1960, Christopher John McLoughlin, father of the bankrupt, executed his last will and testament, in which he provided that a certain trust be established for his widow and children upon his death. By the terms of this trust, McLoughlin's wife was to have an interest for the remainder of her life or until she remarried, whichever first occurred. Upon her death or remarriage, the trustee (Trust Company of Georgia) was to divide the property remaining in trust and administer it in the following manner:

*Item V*

(d) On the death or remarriage of my said wife, said Trustee shall divide the property then remaining in its hands into as many equal shares as I have children then living and deceased children with lineal descendants then living.

(e) Said Trustee shall distribute one of said shares per stirpes among the lineal descendants then living of each deceased child of mine.

(f) Said Trustee shall hold one of said shares in trust for each then living child of mine and shall pay the net income therefrom to such child.

(g) Said Trustee shall be authorized to encroach upon the corpus of the share of such child in such amounts as it may deem necessary in its judgment to provide for the proper support and education of such child.

(h) After the death or remarriage of my said wife, if and when each child is twenty-one (21) years of age the Trustee shall turn over to such child one-third of the share of such child then held by the Trustee; if and when such child is twenty-five (25) years of age the Trustee shall turn over to such child one-half of the property then remaining in its hands; and if and when such child is thirty-five (35) years of age the Trustee shall turn over to such child all of the share of such child then remaining in its hands.

(i) Should any child die after the division of said property into shares but before such child has received all of his or her share, then the share of such child remaining in the hands of the Trustee shall be distributed per stirpes among the lineal descendants then living of such child, if any, and if none shall be added equally to the shares of my other children or their lineal descendants and be held and distributed in all respects as if it had originally been a part of such other share.

(j) If at any time before the final distribution of this trust all of the beneficiaries herein named or described

should die and there should be no such beneficiary to take the property or the income therefrom, then the property remaining in the hands of the Trustee shall be distributed among the persons who would have been entitled thereto under the laws of descent and distribution of the State of Georgia if I had died intestate at that time.

In 1962, McLoughlin and his wife perished in a common disaster. They were survived by two sons, Christopher John McLoughlin, Jr., bankrupt herein, and Norman McLoughlin. As provided in (h) of the trust instrument, Trust Company of Georgia made designated payments of corpus to Christopher J. McLoughlin, Jr. upon his attaining the ages of 21 and 25 respectively. In addition, Christopher J. McLoughlin, Jr. has received payments of net income from his share of the trust, as provided in (f). There is no evidence as to whether Christopher has received any discretionary payments of corpus as provided by (g) of the trust instrument.

In November, 1972, when Christopher was approximately 30 years old, he filed a voluntary petition in bankruptcy. Soon thereafter the trustee in bankruptcy made an application to sell Christopher's remaining interest in the trust created by his father's will. Objections were filed by the bankrupt, the Trust Company of Georgia and other parties not participating in this appeal. The principal question presented to the referee in bankruptcy was whether the trustee in bankruptcy acquired an interest in the remaining corpus of the trust recognizable under § 70a(5) of the Bankruptcy Act. 11 U.S.C.A. § 110a(5) (1970).

The referee resolved this issue in favor of the trustee. He ordered that the bankrupt's interest in the trust be sold, and he directed that the bankrupt be denied any further payments of corpus or income from the trust.[1] On petition for review, the United States District Court affirmed the referee's order to sell the bankrupt's interest in the corpus of the trust as well as the order preventing the bankrupt from receiving further income. However, the District Court reversed the referee's order denying the bankrupt any future discretionary payments under (g) of the trust. The court reasoned that the bankrupt's rights in these payments were nontransferable and therefore outside the control of the trustee under § 70a(5) of the Bankruptcy Act.

The trustee in bankruptcy appeals the District Court's adverse ruling on the question of the discretionary payments clause, and the Trust Company of Georgia cross appeals the District Court's ruling that the trustee in bankruptcy is entitled to sell the bankrupt's interest in the corpus of the trust under § 70a(5) of the Bankruptcy Act.[2]

We consider first the issue raised by the Trust Company of Georgia on its cross appeal. The Trust Company contends that the trustee in bankruptcy has no rights in the bankrupt's interest in the trust corpus under § 70a(5) of the Bankruptcy Act. Section 70a(5) provides that the trustee in bankruptcy shall be vested with title to all of the bankrupt's property which at the date of filing the petition in bankruptcy is transferable by him or subject to levy or judicial process by his creditors.[3] The key issue here, then, is whether the interest received by the bankrupt under his father's will was an interest which he could have transferred prior to or at the time the petition in bankruptcy was filed.

> The trustee of the estate of a bankrupt . . . shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he

1. In re Christopher John McLoughlin, Jr., Bankruptcy No. 75880 (N.D.Ga., filed July 17, 1973).

2. In re Christopher John McLoughlin, Jr., Bankruptcy No. 75880 (N.D.Ga., filed December 5, 1973).

3. Section 70a(5) of the Bankruptcy Act, 11 U.S.C.A. § 110a(5) (1970):

■ The Bankruptcy Act does not specifically catalogue those interests in property which fall within the ambit of § 70a(5) of the Act; instead reference must be made to state law to determine what interests are transferable or otherwise subject to the operation of § 70a(5).[4] It is undisputed that the interest received by the bankrupt through his father's will was a remainder.[5] However, the classification of this remainder interest is vigorously contested by the parties, and apparently the resolution of that dispute will control much of the outcome in this case. By Georgia law a vested remainder is transferable by the party in whom it is vested,[6] while a contingent remainder is non-transferable.[7] The Bankruptcy Judge and the District Court Judge found the interest in this case to be vested. The Trust Company of Georgia argues that it is contingent.

■ The Trust Company contends that the interest in trust corpus which the

bankrupt received through his father's will is one contingent as to the person. It points out that the identity of the beneficiaries is not ascertainable until the death or remarriage of the life tenant, and that therefore whatever interests those beneficiaries receive are contingent. On this point we agree.[8] However, the Trust Company argues further that not only are the interests of the remaindermen contingent until the death of life tenant, but they remain contingent until each separate remainderman attains the ages of 21, 25, and 35 respectively, and is thereby entitled to a distribution of corpus. According to the Trust Company, even though the identity of the remaindermen can be established upon the death or remarriage of the life tenant, there remains a contingency as to an event which must happen if there is to be a distribution of corpus: to be entitled to payments of corpus, each remainderman must survive until the respective ages of 21, 25, and 35.

could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered.

4. Thornton v. Scarborough, 5 Cir., 1965, 348 F.2d 17, 20.

5. Remainder interests are defined by §§ 85–701 and 85–703 of Georgia Annotated Code (1970 rev.):

§ 85–701—An estate in remainder is one limited to be enjoyed after another estate is determined, or at a time specified in the future.

§ 85–703—Remainders are either vested or contingent. A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen.

In this case the interest of the bankrupt was limited to take effect upon the termination of the life estate in his mother. This is ascertainable from clauses (d)–(h) of Item V in his father's will.

6. *See* Foskey v. Lawton, 210 Ga. 193, 78 S.E.2d 505 (1953); J. C. & W. C. Holman Mule Co. v. Bullard, 175 Ga. 900, 166 S.E. 825 (1932); Torbit v. Jones, 145 Ga. 610, 89 S.E. 696 (1916); Oliver v. Irvin, 105 Ga.App. 844, 125 S.E.2d 695 (1962).

7. In actuality the Georgia cases are by no means absolutely clear on the point of whether a contingent remainder is transferable. Some cases indicate that such remainders are transferable, e. g. Erskine v. Klein, 218 Ga. 112, 126 S.E.2d 755 (1962), while others state that contingent remainders are non-transferable. Dismukes v. Bagley, 165 Ga. 665, 141 S.E. 902 (1928); Watson v. Adams, 103 Ga. 733, 30 S.E. 577 (1898). There is agreement on one point: the transfer of a contingent remainder may be made effective through the principle of estoppel. Phelps v. Palmer, 192 Ga. 421, 15 S.E.2d 503 (1941); Isler v. Griffin, 134 Ga. 192, 67 S.E. 854 (1910).

Yet, despite the wavering line of precedent in Georgia, this Court has previously construed the case of Dismukes v. Bagley, 165 Ga. 665, 141 S.E. 902 (1928) as holding that a contingent remainder in Georgia is not subject to the power of a trustee in bankruptcy under § 70a(5) of the Bankruptcy Act. Thornton v. Scarborough, 5 Cir., 1965, 348 F.2d 17. Therefore, we need not attempt a further analysis of the Georgia cases touching on this point.

8. A bequest of a remainder to a person whose identity is unknown until the termination of the life estate clearly creates a contingent remainder in that person. This proposition is borne out by both the cases and the statute defining contingent remainders. Dismukes v. Bagley, 165 Ga. 665, 141 S.E. 902 (1928), Ga.Code Ann. § 85–703 (1970).

The Trust Company asserts that clauses (d), (f), and (g) of the trust instrument have no bearing upon the vesting of the remaindermen's interest in the corpus. Instead these clauses serve merely to instruct the trustee in his administration of the trust by telling him how to divide the corpus for purposes of determining income payments and the extent of encroachment rights for each beneficiary. The Trust Company states that the dispositive provisions of the trust are found in clauses (h), (i), and (j). In these provisions the testator created a scheme of alternative contingent remainders, whereby each child of the testator surviving the life tenant would receive a share of corpus upon reaching the ages of 21, 25 and 35 respectively with alternate provisions for distribution should any child fail to survive. To support its construction of the will, the Trust Company relies upon the rule of construction that "if futurity is annexed to the substance of the gift, the vesting is suspended; but if it appears to relate to an intent merely to delay vesting in possession or enjoyment of the grant, the grant vests instanter", Gillespie v. Ellis, 168 Ga. 790, 149 S.E. 221 (1929). Applying this rule to the instrument before us, the Trust Company argues that it was the clear intention of the testator that three separate gifts of corpus be made to each child: one at age 21, one at age 25, and one at age 35. As tangible support for its argument against vesting until the prescribed ages are reached, our attention is directed to the phrase "if and when" in clause (h), which it is claimed establishes a condition precedent to each separate distribution of corpus. The Trust Company asserts that only "if and when" each survivor of the life tenant reaches the ages of 21, 25 and 35 respectively will he acquire any interest whatsoever in the trust corpus. On this point, we must disagree. Though the argument is technically appealing, it overlooks the substantive intent of the testator, which is the point of critical significance.[9]

As stated previously, we agree with the analysis that the will in this case created contingent remainders in the children of the testator who survived the life tenant. We reach this conclusion on the ground that until the life tenant died, or remarried, the survivors of such life tenant would be unascertained persons.[10] However, once this contingency occurred, the remainders vested in the surviving children of the testator, subject to divestment should these children fail to attain the ages prescribed for distribution of corpus. The interests of these surviving children did not remain contingent until each of them attained the age of 35.

In construing an instrument, the primary objective is to determine the intent of the maker and render the construction which reflects that intent.[11]

9. For each separate gift the trust company would have us interpret the will as establishing the following scheme of alternative contingent remainders:

Age 21 gift, age 25 gift, and age 35 gift: C/R in surviving child-clause (h)

or

C/R in clause (i) beneficiaries

or

C/R in clause (j) beneficiaries.

We find this approach highly contrived and anomalous to the scheme of gifts established in clauses (d)–(g) of the instrument. It is difficult to conceive why the testator would direct that the corpus be divided into shares for the children surviving the life tenant, granting such children a vested interest in income and discretionary payments [clauses (d), (f), and (g)], but making such children's interest in principal contingent [clause (h)]. Instead, we feel that the logic of clauses (d)–(g) is best carried to conclusion by viewing clause (h), not as one determinative of the vesting of the corpus, but as one merely setting the time for its distribution or enjoyment. By our interpretation each child who survived the life tenant obtained a vested remainder [clauses (d), (f) and (g)], subject to divestment by alternative executory devises [clauses (i) and (j)].

10. See footnote 8 *supra*.

11. Ga.Code Ann. § 113–806 (1959 rev.); Boston v. Boston, 231 Ga. 801, 204 S.E.2d 102 (1974); Sheats v. Johnson, 229 Ga. 150, 189 S.E.2d 856 (1972).

Although the law favors vested interests, and a construction in favor of a vested interest will be given in cases of doubt,[12] the basic task before any court is to determine whether or not the testator intended a particular interest to be vested or contingent. In making such a determination we must examine the instrument in its entirety to ascertain whether the testator intended to make a gift presently with payment postponed until a future time, or whether he intended to suspend the gift altogether until such future time.[13]

A factor militating strongly in favor of finding that a gift is made presently with payment postponed is a provision that the recipient receive some present enjoyment in the property, even though a formal delivery will not be made until a later date.[14] The most notable example of the operation of this rule is found in Gillespie v. Ellis, 168 Ga. 790, 149 S.E. 221 (1921). There the settlor established a trust in favor of one J. C. Porter for life, providing that upon his death the trustee was to pay the net income to J. C. Porter, Jr. for his education and support until he attained the age of 21, at which time the trustee was to convey the corpus to J. C. Porter, Jr. J. C. Porter, Jr. died before reaching the age of 21 and his heirs brought suit to compel delivery of the corpus into his estate. The Georgia Supreme Court held that J. C. Porter, Jr. received a vested remainder in this case with payment postponed until he was 21 years of age.

In reaching this conclusion, the Court was strongly swayed by the fact that Porter was to receive intermediate income payments prior to his twenty-first birthday, even though he was not to receive full payment of the corpus until age 21:

Where real estate is granted to a person when or as soon as he shall attain a given age . . . and there are no other words indicative of an intent to confer a vested interest, and nothing in the form of a limitation itself to indicate an intent merely to delay the vesting in possession or enjoyment, and no disposition of the intermediate income, the interest of the grantee will be contingent until he attains the age specified, or the event described has happened. . . . But where income by the way of maintenance, education, and support, or otherwise, is given to the grantee in the meantime, the grant, notwithstanding the gift appears to be postponed, vests immediately upon the execution and delivery of the instrument creating it. 168 Ga. 790, 149 S.E. at 222.

The *Gillespie* case is closely analogous to the one presently before us, for in the trust created by the bankrupt's father, clause (f) makes specific provision that the children surviving the life tenant receive net income from their allotted shares of corpus. Moreover, the McLoughlin trust makes the additional provision that each child surviving the

12. Ga.Code Ann. § 85–708 (1970 rev.); Busbee v. Haley, 220 Ga. 874, 142 S.E.2d 786 (1965); Miller v. Brown, 215 Ga. 148, 109 S.E.2d 741 (1959).

13. A gift which is made presently with payment postponed creates a vested interest, but a gift which is suspended altogether until a future time creates a contingent interest.

The Georgia Supreme Court has discussed this matter in several cases. *E. g.,* Refinance Corp. of Georgia v. Wilson, 183 Ga. 336, 188 S.E. 707 (1936); Gillespie v. Ellis, 168 Ga. 790, 149 S.E. 221 (1929). In Refinance Corp. v. Wilson, the Court made these statements with respect to distinguishing vested and contingent remainders:

A leading distinction is that, if futurity is annexed to the substance of the gift, the vesting is suspended; but, if it appears to relate to the time of payment only, the legacy vests instanter. 188 S.E. at 710, *citing,* 1 Jarman on Wills, 760; Allen v. Whitaker, 34 Ga. 6; Cogburn v. Ogleby, 18 Ga. 56, 58.

When a future time for the payment of a legacy is defined by the will, the legacy will be vested or contingent, according as, upon construing the will, it appears whether the testator meant to annex the time to the payment of the legacy or the gift of it. 188 S.E. at 710, *citing,* 2 Williams on Executors, 1051; Bowman v. Long, 23 Ga. 242, 246.

14. Refinance Corp. of Georgia v. Wilson, 183 Ga. 336, 188 S.E. 707, 710 (1936); Gillespie v. Ellis, 168 Ga. 790, 149 S.E. 221 (1929); Bowman v. Long, 23 Ga. 242, 246.

life tenant is entitled to receive discretionary support payments from his allotted share of corpus.

 Relying on Gillespie v. Ellis, we find the existence of these provisions highly persuasive that the testator intended that those children surviving the life tenant receive a vested interest in their allotted shares of corpus, even though full payment of corpus was not due until they attained the ages of 21, 25 and 35.[15] Despite the provision postponing distributions of corpus, it cannot be denied that the children of the testator received present rights of enjoyment in the property before the time established for distribution. The existence of these present rights, coupled with the statutory provision favoring the vesting of estates,[16] leads us to the conclusion that the interest of the bankrupt vested on the death of his mother, the life tenant. Though this vested interest is subject to divestment should the bankrupt not attain the age of 35, it is nevertheless transferable and therefore subject to the power of the trustee in bankruptcy under § 70a(5) of the Bankruptcy Act.[17]

---

15. In reaching our decision today, we rely heavily upon statements in Gillespie v. Ellis, 168 Ga. 790, 149 S.E. 221 (1929) and Refinance Corp. v. Wilson, 183 Ga. 336, 188 S.E. 707 (1936), that any form of present enjoyment in an estate will indicate that the estate vests presently, even though full payment may be postponed until a future time. To give complete discussion of these cases we note that in Refinance Corp. v. Wilson the Court held the interest to be contingent, although the remainderman received some limited present enjoyment.

In that case the testator directed that his wife and son, Richard, hold his property in trust, paying rents and profits to all of the children of the testator. Then provision was made that when the testator's youngest child reached majority and all debts were paid, the real property was to be divided and a particular tract was to be given to Richard. Prior to this time, Richard became indebted, and the question arose as to whether his interest in the tract allotted to him was vested and subject to levy, or contingent and thereby free from levy.

The Court found the interest to be contingent. Although it recognized Gillespie v. Ellis, *supra*, it distinguished that case. The Court noted that in the instant case Richard was to receive a portion of income from the entire estate, and only upon the youngest child's attaining majority was he to receive a specific interest in the tract allotted to him by the testator. The Court held that the provision that the property not be divided and distributed until the youngest child reached majority was a clear case of a condition precedent. Until this event occurred, Richard's interest in the tract would be contingent.

We follow the Georgia Supreme Court in its view that Refinance Corp. v. Wilson is clearly distinguishable from Gillespie v. Ellis, and we feel that it is distinguishable from the case now before us. In the instant case, the testator directed that upon his wife's death, the corpus be divided into as many shares as he had then living children [clause (d)], and that each surviving child receive net income and discretionary payments from his share [clauses (f) and (g)]. These facts distinguish our case from Refinance Corp. v. Wilson, for in our case a division is made prior to the time of making income payments and income for each beneficiary is limited to that produced by his share of corpus, while in Refinance Corp. v. Wilson, the division took place subsequent to the payment of income and all children shared in the income from the entire corpus. In Refinance Corp. v. Wilson, the testator made it clear that no child was to receive an interest in a separate share of property until distribution of property after the youngest child reached majority. In our case each child who survived the life tenant gained an immediate interest in a particular share, because division was made immediately upon the death or remarriage of the life tenant.

16. Ga.Code Ann. § 87–708 (1970 rev.).

17. As a final remark, we note that the rule of Purefoy v. Rogers, 2 Wm. Saunders 380, 85 Eng.Rep. 1181 (1670), does not apply to this case. This rule provides that "where a contingency is limited to depend on an estate of freehold which is capable of supporting a remainder, it shall never be construed to be an executory devise, but a contingent remainder only, and not otherwise". Of critical significance is the fact that the rule of Purefoy v. Rogers is a rule of law and not a rule of construction, and therefore it takes precedence over the intent of the testator. White v. Summers, 2 Ch. 256 (1908). Apparently the courts of Georgia recognize this rule. *See* Glore v. Scroggins, 124 Ga. 922, 53 S.E. 690 (1906). On this basis the rule could have had a significant influence on the instant case. However, it has become established doctrine that the rule does not apply to equitable interests, and since the beneficiary's interest in the trust in this case are equitable, we need not concern ourselves with the rule. C. Moynihan, Introduction to the Law of Real Property, 202–204 (1962).

The issue raised on the main appeal is whether under § 70a(5) of the Bankruptcy Act the trustee in bankruptcy is entitled to the discretionary support payments intended for the bankrupt in clause (g) of the trust instrument. The Bankruptcy Judge, without discussion, enjoined the bankrupt from further receipt of these payments. On petition for review, the District Court reversed and held these payments outside the reach of the trustee under § 70a(5) of the Bankruptcy Act. As to this, we affirm.

■■■■ Item V(g) of the testator's will establishes what is known as a support trust in favor of the testator's children surviving the life tenant. A support trust is one where the trustee is directed to pay to the beneficiary only so much income or principal, or both, as is necessary for the beneficiary's support and education.[18] Under such a trust the payments are by nature intended for a particular person to serve a particular purpose. For this reason a beneficiary's right to such support payments has historically been held to be non-transferable and not subject to the claims of credi-

tors.[19] To allow the interest to be transferred or subject to the claims of creditors would defeat the underlying purpose and intention of the settlor.

In line with the general trend of authority, the courts of Georgia, in the few cases on the issue, have recognized support trusts and their characteristic of being exempt from the claims of creditors.[20] The last statement by the Supreme Court of Georgia on this point was in 1888 in the case Barnett v. Montgomery & Co., 79 Ga. 726, 4 S.E. 874 (1888). In that case the testator placed certain real property in trust for his widow, providing that she be allowed as much income or use from the property as would be necessary for her "ease and comfort". Subsequent to the establishment of this trust, the widow became obligated on a note. The payee on the note attempted to levy on the widow's support trust to satisfy his debt. The Georgia Supreme Court ruled that the support trust was not subject to the claims of the widow's creditors. The Court emphasized that to hold the trust subject to levy would defeat the pur-

18. II A. Scott, Law of Trusts § 154 (3d ed. 1967); Restatement (Second) of Trusts § 154 (1959).

19. *Id.* Section 154 of the Second Restatement provides:

 Except as provided in §§ 156 and 157, if by the terms of a trust it is provided that the trustee shall pay or apply only so much of the income or principal or either as is necessary for the education or support of the beneficiary, the beneficiary cannot transfer his interest and his creditors cannot reach it. Restatement (Second) of Trusts § 154 (1959).

Sections 156 and 157, which are exceptions to the general rule, are inapposite in this case. Section 156 deals with the situation where the settlor is a beneficiary of the trust. Section 157 describes those persons whose claims are valid against a support trust. These parties and their claims which are valid are as follows: (a) the wife and child of the beneficiary for support or the wife's claim for alimony; (b) the claims of those who furnish the beneficiary with necessary supplies; (c) the claims of those who render services to the beneficiary or furnish materials which preserve or benefit the beneficiary's interest; (d) claims by the United States or a state against the beneficiary. The claims set

out in Section 157 are exceptional; they are not the sort of general claims which seem to be the subject of § 70a(5) of the Bankruptcy Act.

 In Comment (b) to Section 154 of the Second Restatement, the authors point out that the rule that support payments are non-transferable does not stem from a specific restraint on alienation but from the nature of the trust itself.

 In a trust for support it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him, because the beneficiary could not compel payment or compel application in any way except for the restricted purpose set out in the terms of the trust. Restatement (Second) of Trusts § 154, Comment *b* (1959).

*Accord*, II A. Scott, Law of Trusts § 154 (3d Ed. 1967).

20. Barnett v. Montgomery & Co., 79 Ga. 726, 4 S.E. 874 (1888); *c. f.* Reece & McCrary, 51 Ga.App. 746, 181 S.E. 697 (1935).

poses of the trust and the intention of the testator.

 The holding in Barnett v. Montgomery is in harmony with the general rule we have previously discussed. Relying on this case, plus the overwhelming weight of authority from other states, we hold that the rights which the bankrupt received in the support trust are not subject to the control of the trustee in bankruptcy under § 70a(5) of the Bankruptcy Act.

To the contrary, the trustee in bankruptcy argues that he is entitled to the discretionary payments because he "succeeds" to whatever interest the bankrupt has in these payments. However, this is not entirely accurate. Under § 70a(5) of the Bankruptcy Act, the trustee in bankruptcy succeeds to only those interests which the bankrupt, at the time of filing the petition, could have transferred, or which might have been the subject of levy or judicial process. Since we have determined that under Georgia law a beneficiary's interest in a support trust is neither transferable nor subject to levy or judicial process, the trustee is without power to "succeed" to this particular interest. Therefore, we cannot agree with the argument of the bankruptcy trustee.

In summary, we affirm the District Court in all respects. We hold that the bankrupt's interest in the trust corpus is subject to the control of the trustee in bankruptcy under § 70a(5) of the Bankruptcy Act, but that the interest of the bankrupt in discretionary support payments is not subject to the control of the bankruptcy trustee.

This means that the trustee will be allowed to sell the bankrupt's rights to receive distribution of corpus at age 35. However, whoever purchases these rights will take them subject to the testamentary trustee's power to make dis-

cretionary encroachments for the bankrupt's education and support.[21] In addition, the purchaser of the bankrupt's interest in corpus will be entitled to distribution of corpus only in the event that the bankrupt attains the age of 35. Should the bankrupt not survive until age 35, his interest, or that of the purchaser of his interest, will be divested and disposed of according to clauses (i) or (j), whichever is applicable. With respect to the bankrupt's interest in income under clause (f), the trustee has control over this interest under § 70a(5) of the Bankruptcy Act, and will be entitled to collect all income or sell the interest as he sees fit.[22]

Affirmed.

---

21. The effect of our decision on this point will be to allow the bankrupt to receive discretionary support payments from the trustee until he attains age 35, or until his death, if it comes prior to age 35. Upon his reaching 35 years of age, the discretionary support payments will cease and the remaining corpus

will be distributed to the bankrupt or the purchaser of his interest.

22. This is a restatement of the order of the District Court. The disposition of the bankrupt's interest in income was settled in the court below and was not an issue on appeal.